# Lundsford *v.* The State.

## *Murder.*

(Decided June 30, 1911.   56 So. 89.)

1. *Evidence; Res Gestae.*—Declarations made by accused a few minutes after the shooting, and after he had gone into the house, as to how the shooting occurred were too remote from the occurrence to constitute a part of the res gestae.

2. *Charge of Court; Covered by Those Given.*—It is not error to refuse instructions covered by requested instructions already given.

3. *Homicide; Instructions; Self Defense.*—Where there is no evidence tending to show that the killing was done in self defense charges as to the law of self defense are abstract, and properly refused.

4. *Same; Responsibility; Accident.*—If a homicide was preceded by, resulted from, or was an incident of an unlawful act of the accused in following decedent with a loaded gun with which he was killed, the accused may be convicted of an offense embraced within an indictment charging murder although the homicide was accidental and partly due to decedent's own fault.

APPEAL from Hale Circuit Court.

Heard before Hon. B. M. MILLER.

Will Lunsford was convicted of manslaughter and he appeals.   Affirmed.

R. B. EVINS, for appellant.   Counsel discuss the question of self-defense and in support of his contentions cites, on the question of freedom from fault, *Waller v. The State,* 89 Ala. 79; *Robinson v. The State,* 45 So. 916; 25 A. & E. Enc. of Law, 268; *Fussell v. The State,* 94 Ga. 78; *Massey v. Commonwealth,* 29 S. W. 871; *Newman v. The State,* 69 S. W. 519.   Under these authorities it is insisted that the defendant was entitled

[Lundsford v. The State.]

to go to the jury on the issues of self-defense.—*Newsom
v. The State*, 75 S. W. 269. The court should have per-
mitted the evidence offered as to the exclamation of the
witness Knollton, and as to the explanation of defend-
ant immediately after the shooting.—*Hartnett v. Mc-
Mahon*, 168 Mass. 3; *M. & M. R. R. Co. v. Ashcraft*,
48 Ala. 31; 3 Wig. Sec. 1755; *State v. Lockett*, 68 S. W.
565; *State v. Gabriel*, 88 Mo. 631; 21 A. & E. Enc. of
Law, 99-102; *Nelson v. The State*, 130 Ala.; *Jones v.
The State*, 103 Ala. 1; *Drake v. The State*, 110 Ala. 9;
*Simmons v. The State*, 145 Ala.61; *Williams v. The
State*, 103 Ala. 33; *Walle v. The State, infra*. Man-
slaughter in the second degree may be the result of an
intentional blow, and is not essentially a negligent kill-
ing.—*State v. Benjamin*, 121 Ala. 26. Counsel discuss
other charges refused, with citations of authority.

R. C. BRICKELL, Attorney General, and T. H. SEAY,
Assistant Attorney General, for the State. The decla-
rations are not admissible because not of the res gestae.
—*Oliver v. The State*, 17 Ala. 587; *Roberts v. The State*,
68 Ala. 515; *Goley v. The State*, 87 Ala. 57; *Hill v. The
State*, 156 Ala. 3. Sufficient time had passed in which
the defendant might form a decision to make these dec-
larations as evidence for himself.—*Hawkins v. The
State*, 129 Ala. 71; *Pitts v. The State*, 140 Ala. 70; 12
Cyc. 428. The exclamation of the witness Knollton was
not admissible.—*Fonville v. The State*, 91 Ala. 39; 32
Ark. 289; 30 S. W. 450. The charges relative to the law
of self-defense are abstract, and the defendant offered
no proof that he was in imminent danger or that there
was no reasonable mode of escape.—*Goodwin v. The
State*, 102 Ala. 87; *Naugher v. The State*, 105 Ala. 29.
The defendant was properly convicted of manslaughter

in the second degree.—*Johnson v. The State,* 94 Ala. 35; *Sanders v. The State,* 105 Ala. 4.

WALKER, P. J.—The deceased, Frank Lewis, was a negro youth, about 19 years of age, who was employed by the defendant as a laborer or servant. He was engaged in service about the defendant's residence. That he came to his death as the result of a shot fired from a gun in the hands of the defendant is a fact about which there was no dispute in the trial. The conflict in the evidence was as to the circumstances of the shooting. The evidence offered by the prosecution was to the effect that the deceased ran out of the defendant's residence; that he was followed by the defendant, who had the gun in his hand; that the defendant called to the deceased to come back, and shot him when he was about 10 feet away.

The version of the affair given by Mrs. Ellen Knowlen, the principal witness for the defendant, was as follows: "The first I knew of any difficulty, Mr. Lunsford was sitting in his dining room, which opens on the back porch. Frank came up on the porch, and said, 'Have you got any money?' Mr. Lunsford said, 'Yes; I generally have a little; why?' Frank said, "I want some.' Mr. Lunsford said, 'Where did you get those eggs from?' Frank replied in an insolent manner: 'It's none of your business. Other people have eggs besides you.' Mr. Lunsford said: 'All right; we will go and look at them, and see whose they are.' Frank said, 'It's none of your business whose eggs they are, and I won't show you.' Mr. Lunsford reached over towards a gun in a corner, and Frank ran out into the yard. Mr. Lunsford came out on the porch with the gun in his hand, hanging down by his side, and walked down on the ground, and said, 'Come back, and go with me to see those eggs.'

Frank came back towards him, and Mr. Lunsford slight-
ly turned to go in the direction of Frank's house, where
the eggs were.  Frank was approaching him, and as he
neared him he in an angry manner leaped towards Mr.
Lunsford and grabbed at the gun.  As he did so, Mr.
Lunsford jumped back, and said:  'Don't touch this
gun; keep your hands off this gun.'  Frank grabbed for
the gun again, and caught it by the barrel; Mr. Luns-
ford holding it by the stock.  As he grabbed the gun,
Mr. Lunsford said: 'Turn this gun loose; don't try to
take this gun.'  As Frank grabbed the gun, I ran back
into the house, and heard the gun.  Seeing Frank grab
the gun, hearing Mr. Lunsford tell him to turn it loose,
and hearing the report of the gun were almost simulta
neous.  A second or two later, from the front door, to
which I had run, I saw Frank walking through the front
yard, with blood running down his leg. * * * I went with
Mr. Lunsford after the shooting to where Frank Lewis
was sitting, on the side of the road, just outside Mr.
Lunsford's front gate.  The said Frank said, 'Mr. Will,
I didn't think you were going to shoot me,' to which the
defendant replied:  'I did not intend to shoot you,
Frank; you made me by jerking the gun.'  The defend-
ant appeared very much distressed."  No witness for the
defendant testified to seeing the parties at the time the
shot was fired.

On cross-examination of one of the witnesses for the
state, and on the direct examination of a witness for the
defendant, his counsel asked questions whereby he
sought to elicit proof that defendant, "within two min-
utes after the shooting, ran into the house and stated
to members of his family that he had unintentionally
shot Frank Lewis, and asked them for God's sake to
help him save his life"; also of defendant's efforts, af-
ter he had been in the house, to stop the flow of blood

from the wound inflicted on the deceased; also that defendant, after the shooting, "within a minute or two thereafter," ran into the house, and said, "I have shot Frank Lewis; he did it grabbing the gun"; also that the defendant, immediately after the shooting, gave orders to send for a doctor to attend the deceased; and also that Mrs. Knowlen, when she saw the deceased walking through the front yard immediately after the shooting, exclaimed, "Thank God, it was the negro, and not Will." Exceptions were duly reserved by the defendant to the action of the court in sustaining objections interposed to the questions just referred to.

It is insisted in the argument of the counsel for the appellant that the court was in error in excluding proof of the above-mentioned acts and declarations subsequent to the shooting. It is urged that those acts and declarations constituted part of the res gestae, and as such could properly be proved. In this view we cannot concur. Under the rulings in this state, such declarations or acts, so separate in point of time and place from the main transaction which is the subject of investigation, are not to be regarded as parts of that transaction.— *Pitts v. State,* 140 Ala. 70, 37 South. 101; *Nelson v. State,* 130 Ala. 83, 30 South. 728; *Harkness v. State,* 129 Ala. 71, 30 South. 73; *Hill v. State* 156 Ala. 3, 46 South. 864. Frequently it is a matter of difficulty to determine whether acts or declarations of one of the parties to a transaction, not strictly coincident with the central fact of the occurrence, are so related to it as to illustrate or explain it and to be in reality parts of the one transaction, or stand apart from it as subsequent events. In considering whether certain declarations which had been offered in evidence were to be regarded in the one light or the other, it was said, in the opinion in the case of *Nelson v. State, supra*: "And

this depends upon whether the circumstances are such as that it may with reasonable certainty be affirmed that the declarations were *produced* by and *instinctive* upon the occurrence to which they relate, rather than a *retrospective narration* of them." In that case the proof, which was held to be admissible, was of a declaration in regard to a fatal difficulty made by one of the parties to it, and the ground upon which it was held to be admissible was that, though it was made after the fatal shot was fired, yet, as the difficulty was to be regarded as still in progress at the time, what was said in the course of it should be considered as really a part of the transaction. Not so in the case at bar.

At the time of the declarations and acts here sought to be proved, the shooting in question was a thing of the past. One of the parties had gone one way; the other another. They were no longer in the presence of each other. The incident was closed. The court could not say with reasonable certainty that the declarations and acts sought to be proved were the unpremeditated results of what had happened between the deceased and the defendant, rather than the results of a subsequent design on the part of the defendant, quickly formed when the deceased was no longer in his presence, to give the occurrence an aspect favorable to himself and to minimize as far as possible its disasterous consequences. The question of the admissibility of the proposed proof was one for the court. It could not be put in error because of its action in excluding it, unless this court would be justified in affirming that it appears with reasonable certainty that the declarations and acts sought to be proved were spontaneous and unpremeditated accompaniments of the main facts of the occurrence, explanatory of the conduct and purposes of the participants, and that, for lack of sufficient time to afford an

opportunity for thought or deliberation, they could not be attributed to subsequently formed motives or purposes. It would involve a failure to recognize as a fact the wonderful alertness of the human mind, under the quickening influence of exciting incidents, to plan and put into execution means of self-defense, whether against physical violence or an actual expected incriminating charge or imputation, to say that one who had shot another could not within a much shorter period than two minutes conceive, on withdrawing from the scene, the purpose of putting the affair in a light most favorable to himself, and also be prompted by a hasty repentance to adopt prompt means of averting a possibly fatal consequence of his act.

The acts and declarations of the defendant subsequent to the shooting, which were proposed to be proved, were properly excluded, because it could not with reasonable certainty be affirmed that they were spontaneous, unpremeditated, proximate results of the occurrence of which the shooting was the culminating incident, and that they could not have been attributable to motives or impulses on the part of the defendant afterwards coming into play. Subsequent acts or declarations of a participant in an occurrence are not lightly to be declared integral parts of it, pertinent on an inquiry as to its real nature or character, as shedding light upon the influences which were controlling in bringing to pass what was done, where they may as well be traced to an origin, in whole or in part, in thoughts or feelings arising on and after contemplation of or reflection about what already had happened, as to the incentives to which the conduct of such participant which is under consideration may be attributable. Declarations the proof of which should be excluded under the rule against hearsay testimony are not to be permitted to slip in

under a false guise of forming a constituent part of
something that had gone before. The exclamation of
Mrs. Knowlen, sought to be proved, amounted to a mere
comment by an outsider on the occurrence after it had
happened, and could not possibly shed any light on the
past acts or purposes of the participants. That pro-
posed proof also was properly excluded.

We are unable to discover any evidence in this record
having a tendency to prove that the shooting was a vol-
untary act on the part of the defendant done in self-
defense. The evidence offered by the state was to the
effect that the shooting was under circumstances which
wholly precluded any claim on behalf of the defendant
that it was done in self-defense. The tendency of the
evidence introduced in behalf of the defendant was to
prove that the shooting was the result of the deceased
grabbing or jerking the gun, and not at all attribu-
table to a purpose or intention on the part of the de-
fendant to shoot the deceased. In the most pointed and
unequivocal manner, the defendant, by the evidence he
introduced and also by his offers of proof which the
court excluded, made plain his purpose to disclose the
occurrence in question to the court and jury under such
an aspect as to exclude an inference that the shooting
was in any sense a voluntary and intentional act on his
part. There was no hint in the evidence of a claim on
the part of the defendant that the fact was that he in-
tentionally shot the deceased, but that his act in so do-
ing was excusable, because it was really or apparently
necessary for the defense of himself. Charges dealing
with the law of self-defense may properly be refused as
abstract in a homicide case from which there is absent
any evidence tending to prove the existence of a state
of facts upon which the defendant could legally base a
claim that the killing was in self-defense.—*Thomas v.*

*State,* 150 Ala. 31, 43 South. 371; *Handy v. State,* 121 Ala. 13, 25 South. 1023; *Lewis v. State,* 96 Ala. 6; 11 South. 259, 38 Am. St. Rep. 75; *Anderson v. State,* 160 Ala. 79, 49 South. 460. The law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional The defendant made the issue in this case one between an intentional killing, under circumstances precluding any claim of self defense, and a killing resulting from a shot unintentionally fired from a gun in his hands. Charges 1, 2, 6, 13, and 14, refused to the defendant, were instructions as to the law of self-defense. They were not applicable to any phase of the evidence, and the court is not to be put in error because of its refusal to give them.

The propositions asserted in charge 19, refused to the defendant, were fully covered by other written charges given at his instance, and he could not have been prejudiced by the refusal of the court to reiterate in slightly varying phraseology propositions already stated to the jury in writing.

The defendant's written charge 20 was properly refused, because it predicated a right of acquittal upon the facts there hypothesized. The charge was calculated improperly to confine the attention of the jury to the exact time when the shooting took place. If the jury found from the evidence that it was preceded by, resulted from, or was an incident of, an unlawful act of the defendant in following the deceased with a loaded gun, they would have been justified in convicting him of an offense embraced in the indictment, though they found from the evidence that the death of the deceased was unintentional, or accidental, and that it was in a measure due to his own fault.—*Barnes v. State,* 134 Ala. 36, 32 South. 670; *Thompson v. State,* 131 Ala. 18, 31

South. 725; *White v. State,* 107 Ala. 132, 18 South. 226; *Chapman v. State,* 78 Ala. 463, 56 Am. Rep. 42. Affirmed.

DE GRAFFENRIED, J., not sitting.