# CASES

# SUPREME COURT OF ALABAMA

### NOVEMBER TERM 1911-12.

## Costello *v.* The State.

### *Murder.*

(Decided April 1, 1912. Rehearing denied April 25, 1912.
58 South. 202.

1. *Jury; Venire; Order.*—The order for a special venire, and for the summoning and service of said venire examined and it is held that while the order did not conform to the statute as to what shall constitute a special venire, yet defendant received everything he was entitled to under the statute, (Sec. 7265, Code 1907) and could not have been injured by the irregularity, and hence, was not entitled to reversal because thereof. (Sec. 6264, Code 1907.)

2. *Evidence; Expert.*—A physician testifying as to the cause of the death of decedent should give his opinion as of the time he was testifying, and should not be permitted to express his expert opinion as to the cause of the wound of the decedent "on the day he examined deceased."

3. *Same.*—A physician may properly testify that it was possible that the wounds found on defendant had been inflicted by falling and striking a dresser, although he also testified that he would hate to say whether it was probable that they were so received.

4. *Witnesses; Impeachment.*—Where a defendant testified for himself, it is permissible for the state to show that he made statements contradictory of his evidence from the witness stand, and the state was properly permitted in this case to recall defendant after he had testified, for the purpose of laying a predicate for his impeachment.

APPEAL from Dale Circuit Court.

Heard before Hon. A. H. ALSTON.

Ed Costello was convicted of murder, and he appeals. Reversed and remanded.

H. L. MARTIN, for appellant. The orders for the special venire for the summoning and services of the same on defendant were not properly made, and constitute reversible error.—*State v. Mills,* in MSS; 69 Ala. 159; 71 Ala. 17; *Allen v. State,* 146 Ala. 65; Sec. 7840, Code 1907. The court was in error in permitting the doctor to state his opinion as to the cause of the death on the day he examined the decedent.—17 Cyc. 34; 5 Enc. of Evid. 548 and 657. The court was in error in permitting defendant to be recalled for the purpose of laying a predicate for his impeachment.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Although the order was irregular the defendant received under it everything guaranteed him by the statute, and hence, no injury intervened.—*Lide v. State,* 133 Ala. 43; *Evans v. State,* 120 Ala. 269; Sec. 6264, Code 1907. The return to certiorari shows a correct order.—*McSwain v. State,* present term. There is no error in the court's ruling on the testimony of the physician.—*McLean v. State,* 16 Ala. 672; *Tullis v. Kidd,* 12 Ala. 648. The competency of an expert is a matter for the determination of the trial judge subject to revision only in the event this discretion is abused.—*Odom v. State,* 56 South. 913; *Braham v. State,* 143 Ala. 28; *Roberts v. Fleming,* 31 Ala. 683. This case is distinguished from the line of cases holding that a witness in position to know may state whether or not a certain fact be possible.—*A. G. S. v. Lynn,* 103 Ala. 134; *McVay v. State,* 100 Ala. 110; *B. R. L. & P. Co. v. Mullen,* 138 Ala. 614. There was no error in permitting the impeaching testimony showing contradictory statements made by defendant.

DOWDELL, C. J.—It appears that on the day of the arraignment of the defendant, which was on Monday of the second week of the term, the court made an order for 25 special jurors to be drawn for the trial of the defendant, which, together with the regular jurors "drawn and summoned" for the week, should constitute the special venire from which to select a jury. The order of the court did not definitely state the number of jurors to constitute the special venire, but was as follows: "* * * It is ordered by the court that the sheriff summons twenty-five persons in addition to those drawn and summoned as the regular jurors for the week set for the trial of the case. The presiding judge then, in open court, proceeded to draw from the jury box of said county the number of names required, with the regular jurors drawn and summoned for the week, to make the whole number of jurors not less than fifty nor more than one hundred."

So it appears that 25 special jurors were ordered and drawn pursuant to law as constituting a part of the special venire. It also appears from the record that the number of regular jurors drawn and summoned for the week was 30. It also appears that on Monday, the day that the order was made for the special venire, the court, in organizing the regular juries for the week, excused 4 of the regular jurors drawn and summoned for the week, thus reducing the number of regular jurors drawn and summoned from 30 to 26; the latter being the number of regular jurors organized and impaneled for the week. It appears from the record that the 26 jurors impaneled for the week and the 25 special jurors drawn from the box by the presiding judge constituted the special venire from which the jury was selected to try the defendant. While the order of the court was not pursuant to provisions of the statute as to what should con-

stitute the special venire, still the defendant got all that he was entitled to under the statute.—Cr. Code, § 7265. We are satisfied that no injury resulted to the defendant from the irregular order of the court in respect to the special jury.—Cr. Code, § 6264.

There was no eyewitness to the tragedy that testified in the case. The deceased was found in her house, about 12 o'clock in the day lying dead upon the floor, her head near her dresser, and also near a wood box. When found, her body was yet warm. There was a gash in her right temple about 2 to 2½ inches long, as if made by a blunt instrument. There was also a bruise over her left eye. As to how the deceased came to her death, the evidence was wholly circumstantial. So, too, the evidence tending to connect the defendant with the tragedy was wholly circumstantial.

The theory of the defense was that the death of the deceased was accidental; that the wound on the right temple, which caused her death, resulted from her having fallen against the dresser, which had a sharp edge, or upon the wood box.

Dr. Godwin, a witness for the defendant, testified that he was called the day that Mrs. McGill was found dead; that he examined her, though he did not make a thorough examination. He got there soon after she died; her body being still warm. He described the position in which she was lying on the floor, near the corner of the room; her head being between the light wood box and the dresser. This was the position in which she was first found. This witness then testified as follows: "I saw the wounds on her. She had a long wound, about 2½ inches long. The skin was broken or cut, seemed to be, by blunt instrument, either by a blow or by a fall. I saw their dresser. There was a wood box there to the left of her. The wood box was on the east side of the

house. It was close to her. The dresser had a sharp edge to it. The dresser was to the right of her, and the wood box to the left, one about as close to the corner as the other. Her head was nearer the wood box, and her neck between the corner of the wood box and the dresser."

The defendant then sought to prove by this witness what was his opinion on the day he examined her, when she was found dead, as to what caused the wounds. This was objected to by the state, and the court sustained the objection. There was no error in this ruling, as the inquiry should have been, as to the witness' opinion, at the time he was testifying, and not at the time he examined the body.

This witness testified that he was a practicing physician, a graduate of the medical department of the University of Alabama, at Mobile, having a diploma, and having a license by the state board to practice medicine. He further testified, without objection: "The phone was in between the wood box and the dresser. In going to the phone, her right side would be to the dresser. I think it is possible that in a fall, and striking that dresser, such wounds as I found on her could have been inflicted; but, as to whether it was probable, I would hate to say." The bill of exceptions then here recites: "The presiding judge then said to the witness: 'Dr. Godwin, I wish you would say one way or the other.' The witness replied, 'I don't feel competent to say.' The presiding judge then said, 'You don't feel competent to say?' And the witness replied: 'No, sir; not exactly.'" The bill of exceptions then recites: "The state then moved to exclude what the witness said, that it was possible, but whether it was probable or not he would hate to say. The court sustained the motion, and excluded the evidence, and the defendant excepted." In this rul-

ing, the court was in error. The evidence excluded was competent and relevant, and should have been permitted to go to the jury for their consideration in determining whether or not the death of the deceased was accidental.

The defendant having testified as a witness in his own behalf, it was permissible to impeach him by showing that he had made statements contradictory of his testimony as a witness on the stand. The court therefore committed no error in permitting the state to recall the defendant to the stand after his having testified as a witness, for the purpose of laying a predicate for his impeachment. The objections of the defendant to the predicate laid were without merit. The evidence offered was for the purpose of impeachment solely, and not for the purpose of showing a confession.

For the error indicated, the judgment must be reversed, and the cause remanded.

Reversed and remanded. All the Justices concur.