[Powell v. The State.]

# Powell *v.* The State.

## *Murder.*

(Decided December 19, 1912.   Rehearing denied January 13, 1913.
60 South. 967.)

1. *Jury; Disqualification; Relationship.*—Where one grandmother of a juror and one grandfather of defendant were first cousins, the relationship of juror and defendant was within the disqualifying degree of paragraph 4, section 7626, Code 1907.

2. *Appeal and Error; Harmless Error; Evidence.*—Where evidence admitted was of a fact not controverted, but was subsequently testified to and admitted by defendant in his own evidence, its admission was harmless error, if error at all.

3. *Evidence; Res Gestae; Declarations of Accused.*—Where the court cannot say with reasonable certainty that the declaration spontaneously sprung from the main transaction without premeditation or design to be self-serving, such declaration is not admissible; the facts in this case being that the declaration was made by the defendant after fatally wounding deceased, and after having given up his pistol and gotten over a fence on the side on which deceased was lying.

4. *Witnesses; Impeachment; Predicate.*—Where the impeaching witness was unable to identify the time that the statement was alleged to have been made as the time predicated in the question asked the witness to be impeached, it was proper to exclude testimony of such prior contradictory statements.

5. *Appeal and Error; Rehearing; Matters Reviewable.*—Although such objection was presented for the first time on application for rehearing the defendant was entitled to a review of his objections that the record showed no proper order prescribing the number of jurors from which his jury could be selected.

6. *Same; Grounds of Reversal.*—Under section 6264, Code 1907, a cause will not be reversed because the order prescribing the number of jurors from which the jury should be selected was not made before the drawing of the jury, but was made at the time the jury was drawn.

7. *Homicide; Verdict; Sufficiency.*—A verdict finding defendant guilty of murder in the second degree, and fixing the punishment at ten years, was not insufficient to support a judgment of conviction because it did not fix the place if imprisonment, since that is fixed by the statutes, and is not essential to the validity of the verdict.

APPEAL from Pike Circuit Court.

Heard before Hon. H. A. PEARCE.

Mark Powell was convicted of murder in the second degree and he appeals. Affirmed.

W. L. PARKS, for appellant. There was no sufficient order fixing the number of jurors before the drawing of said jury.—Section 32, Acts 1909, p. 318; *Morris v. The State,* 146 Ala. 86; *Allen v. The State,* 145 Ala. 11; *Brown v. State,* 115 Ala. 8; *Washington v. State,* 81 Ala. 37. The evidence of declarations of defendant were improperly excluded as they were a part of the res gestae.—*Cooper v. The State,* 63 Ala. 80; *Garrett v. The State,* 76 Ala. 18; *Seams v. The State,* 84 Ala. 416; *Fonville v. State,* 35 Ala. 617; *Williams v. State,* 147 Ala. 24. The verdict failed to fix the place of punishment, and was therefore not sufficient to support the judgment.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The juror Enzor was related to defendant within the disqualifying degree.—Sec. 7276, Code 1907; *Danzey v. State,* 126 Ala. 15. The statement of defendant made after the shooting was not of the res gestae, but was self-serving and properly disallowed.—*McGuire v. State,* 3 Ala. App. 40; *Ferguson v. State,* 134 Ala. 63; *Williams v. State,* 105 Ala. 96. The witness could not identify the time as the same as that laid in the impeaching question, and hence, was not in position to relate the alleged contradictory statements. The defendant suffered no injury from the mode and manner of drawing the jury.—*Costello's Case,* 58 South. 502; Sec. 6264, Code 1907.

PELHAM, J.—The conditions surrounding and illustrating the scene of the tragedy and leading up to it as

narrated by the witnesses show that the deceased, with some four or five other young men companions, met on a certain Sunday morning in April, 1912, at Harmony Church in Pike county. Entertaining a common purpose to engage in gambling at a game with dice commonly called "craps," these young men, some of whom had already commenced to drink whiskey, repaired to the woods about half a mile behind the church, hitched their horses, spread lap robes upon the ground, gathered round this improvised gambling cloth, and all of them were engaged in gambling, and some were, or had been, drinking whiskey when the defendant and two other young companions drove up on an expedition in quest of beer. The defendant and his two companions had a short time previous to joining the party in the woods back of the church gathered together on this same Sunday morning at a country store near by, and it seems the defendant had intrusted to one of the young men that had gone off and engaged in the crap game, a dollar with which to procure beer for him (the defendant), and the three who had collected at the store drove off together in the defendant's buggy in search of the other party and the beer. Upon arriving at the scene of the gambling game, one of the members of the defendant's party went over to where the game was in progress, crossing a rail fence in doing so, an'd endeavored to procure beer from some of the party engaged in "shooting craps." The defendant and his other companion remained on the other side of the fence from the crap shooting party, the defendant coming close up to, and resting against, the fence. The lap robes used as gambling cloths were just over the fence, nearest edge of such cloth or robe being but a few feet from the the fence. (For more than a year previous to this time bad feeling had existed between the defendant and the

deceased.) When the defendant came up to, and rested his arm upon, the top rail of the fence, directly opposite to him across the lap robe and facing him sat the deceased, about 20 feet away, engaged at that time with five companions in gambling at the crap game. After the member of the defendant's party who crossed the fence had asked for and failed to secure the coveted beer, the defendant called to another member of the gambling party, to whom the defendant had the day before given a dollar for the purpose of getting some beer for him, and asked about the beer that was to be secured for him with the dollar given for that purpose. Just what took place from this point in the transaction leading up to the killing is in dispute, but it is not controverted that after certain bantering between the deceased and the defendant, the deceased got up and started towards the defendant, and that the defendant drew his postol and shot the deceased dead, and seriously wounded one of the other members of the gambling party. The defendant fired six shots in rapid succession at close range, and the deceased moved only a few steps from the time the first shot struck him until he dropped down upon the ground dead. It was also shown that the deceased had a pistol on his person, handy to use, but whether or not he actually drew it from his hip pocket when he got up and started to go towards the defendant immediately before he was shot by the defendant the testimony is in conflict. The evidence is also in conflict with reference to what was said just preceding the shooting, by the defendant and the deceased having a tendency to show which party was at fault in this respect in bringing on the fatal difficulty. The defendant was charged with murder in the first degree, and admitted the killing, but contended that he acted through necessity in self-defense. There was

evidence in behalf of the defendant having a tendency to show that he was acting in self-defense, and evidence of the state having a contrary tendency. The defendant also introduced evidence of threats made by the deceased some time prior to the killing. The jury returned a verdict of guilty of murder in the second degree, and fixed the punishment at imprisonment for 10 years.

When the court was impaneling the jury to try the case, it was shown that the grandmother of one of the jurors, on his father's side, and the grandfather of the defendant, on his father's side, were first cousins, whereupon the court excused said juror and struck his name from the list of jurors constituting the panel from which the jury was selected to try the case. The defendant excepted, and counsel urge this action of the court as error. The competency of jurors in respect to their relationship to parties is regulated by statute.—Code, § 7276. When existing by consanguinity, the relationship disqualifies when within the ninth degree. —Code, § 7276, p. 4. Computing the relationship under the proper rule, counting from the juror to the common ancestor and then down to the defendant, calling it a degree for each, ascending and descending, the juror is within the degree of relationship which disqualifies, and the court properly excused him and struck his name from the jury list.

The ruling of the court in admitting certain testimony of the witness Dr. Tompkins, to the effect that he said to Harmon, in the defendant's presence, when the three drove in sight of the gambling party that he (Tompkins) would get out of the buggy and go down where the gambling party were and get the beer, as the defendant and deceased were not on good terms, if error, was without injury. This testimony was later

admitted without objection when the witness Harmon testified, and the defendant, when being examined as a witness in his own behalf, testified, to the same thing, and this testimony was without contradiction.—*McGuire v. State,* 3 Ala. App. 40, 44, 45, 58 South. 60; *McIntyre v. State,* 1 Ala. App. 200, 55 South. 639.

The statement, made by the defendant after the killing, that the court refused to allow to go to the jury, is shown to have been made by the defendant after he had given up his pistol, and after he had gotten over the fence to that side upon which the deceased was lying dead, or so badly wounded that he was unconscious and his life necessarily despaired of and very rapidly ebbing away. At the time of this declaration of the defendant sought to be proven, the shooting and the encounter were things of the past, and the deceased at that time no longer to be counted among the living. The court could not say with reasonable certainty that the declaration sought to be proven as a part of the res gestæ of the transaction was unpremeditated and spontaneously springing out of the main transaction, or was not the result of a subsequently quickly formed design on the part of the defendant, realizing that the deceased was dead or in a dying condition, to give favorable color to his actions for a self-serving purpose. "Subsequent acts or declarations of a participant in an occurrence are not lightly to be declared integral parts of it, pertinent on an inquiry as to its real nature or character, as shedding light upon the influences which were controlling in bringing to pass what was done, where they may as well be traced to an origin, in whole or in part, in thoughts or feelings arising on an after-contemplation of or reflection about what already had happened, as to the incentive to which the conduct of such participant which is under consideration may be attributable.

Declarations the proof of which should be excluded under the rule against hearsay testimony are not to be permitted to slip in under a false guise of forming a constituent part of something that had gone before."— *Lundsford v. State,* 2 Ala. App. 38, 44, 56 South. 89, 91.

The admissibility of the proposed declaration was for the trial court, and unless this court would be justified in saying that it affirmatively appears with reasonable certainty that the declaration sought to be proven was spontaneous, and the unpremeditated accompaniment of the shooting, explanatory of the conduct and purpose of the parties, or one of them, and that it could not be attributable to subsequently formed motives or purposes, the trial court cannot be put in error for refusing to allow the declaration to be proved. It seems to us that the declaration of the defendant, under the rule as stated, was properly excluded, or not allowed by the court to be proven. The reasoning and holdings in the following cases support the views expressed and our holding on this proposition:—*Lunsford v. State, supra; Pitts v. State,* 140 Ala. 70, 37 South. 101; *Harkness v. State,* 129 Ala. 71, 30 South. 73; *Ferguson v. State,* 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17; *Williams v. State,* 105 Ala. 96, 17 South. 86; *Hill v. State,* 156 Ala. 3, 46 South. 864.

The witness T. W. Adams was unable to identify the time inquired about in the question asked him as the same time predicated in the question asked the witness Smart in laying a predicate seeking to impeach his testimony, and the court properly sustained, the objection of the state, and refused to allow the witness to testify with respect to what was said at a different time, or time not properly identified as the same time specified in the predicate.

Investigation of the record fails to disclose reversible error, and the case will be affirmed.

Affirmed.

### ON APPLICATION FOR REHEARING.

Possibly some just criticism along the line of "the law's delays" might be found in the fact that, although the ample brief for the defendant in this case filed on the original submission was signed by five able attorneys as representing the defendant, no suggestion was offered, or intimation even made, that the record failed to show a proper order of the court in prescribing the number of jurors from which the jury to try the case should be selected, until on this application for a rehearing the point is made for the first time. This, however, cannot, under our forms of law and practice, and procedure based on them, operate to prevent a full consideration of the question presented at this late day on application for rehearing, although never urged or suggested at any stage of the proceedings until now. The defendant is clearly within his rights in making the insistence; the fault, if any, is not that of the defendant or his counsel, but of the system.

The order of the court assailed, as set out in the record, is as follows: "September 23, 1912. Defendant being in open court with his attorneys, and being duly arraigned, pleads not guilty, and his case is set for trial on Thursday, September 26, 1912; and the court then drew from the jury box the names of 35 persons, and the sheriff is directed to summon said 35 named persons, together with the 41 regular jurors drawn and summoned for the present week of court, making 76, all to be and appear on Thursday, the 26th of September, 1912, as a venire for the trial of the defendant, and he

is also directed to serve the defendant forthwith with a copy of the indictment on which he is to be tried, and with a list of the names of the 76 persons constituting the venire for his trial." It would seem that the provisions of the jury law contemplated the order fixing the number of jurors to be made before the drawing. The order shown by the judgment entry before us in this case does not specifically set forth that this order was made at that particular time, but does show the order to have been made, and that the court in one and the same order, and practically contemporaneously, made an order fixing the number, including the specified number of regular jurors drawn and summoned for the week of the trial, that should constitute the venire from which the jury to try the defendant should be selected. This was a substantial compliance with the statute, and one from which we are satisfied no injury resulted to the defendant, as vide its discovery at this late date.—Code, § 6264.

In *Costello's Case,* 176 Ala. 1, 58 South. 202, the order made by the trial court was no order in so far as fixing the number to constitute the special venire was concerned, in that it only fixed a number between the minimum and maximum already fixed by law, and the Chief Justice, in speaking the unanimous opinion of the court in that case, said: "While the order of the court was not pursuant to provisions of the statute as to what should constitute the special venire, still the defendant got all that he was entitled to under the statute.— Code, § 7265. We are satisfied that no injury resulted to the defendant from the irregular order of the court in respect to the special jury.—Code, § 6264." The same may applicably be said with respect to this case, except that in this case an order fixing the number definitely was made, but is not shown by the judgment

entry to have been made before, but at the time of, the drawing—an irregularity of less import, it seems to us, than appeared from the record in *Costello's Case.*

The only other ground assigned as a reason for granting a rehearing is that the verdict of the jury is not sufficient to support the judgment of conviction. The verdict is in the following words: "We the jury find the defendant guilty of murder in the second degree, and fix the punishment at 10 years." It is insisted that, the jury not having fixed the punishment at imprisonment in the penitentiary, the court could not enter a judgment to that effect. The statute fixes the place, and it could not have .been elsewhere.—Code, §§ 7620, 7088; *Gunter v. State,* 83 Ala. 96, 3 South. 600; *McGuff v. State,* 88 Ala. 147, 7 South. 35, 16 Am. St. Rep. 25. The verdict is amply sufficient to support the judgment of conviction, and the court properly sentenced the defendant to imprisonment in the penitentiary.—*Watkins v. State,* 133 Ala. 88, 32 South. 627; *Weaver v. State,* 1 Ala. App. 48, 55 South. 956; *McGuff v. State, supra; Lewis v. State,* 51 Ala. 1.

Application for a rehearing is denied.