196 So.2d 731

**Wilson LANIER**

v.

**STATE.**

5 Div. 669.

Court of Appeals of Alabama.

March 14, 1967.

See also 43 Ala.App. 38, 179 So.2d 167.

Walker & Hill, Opelika, for appellant.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charges murder in the second degree. From a judgment of conviction for said offense, with a penitentiary sentence of eleven years, defendant appeals.

The evidence shows without dispute that Wilson Lanier killed Arthur Thomas by shooting him with a pistol. Defendant claimed self defense.

State's witness Willie James Jones testified that about 7:30 Georgia time, March

13, 1964, he and Arthur Thomas were in his mother's yard when defendant and Chester Seldon went next door to Jones' brother's house in Lanier's car. Witness and Thomas walked to his brother's house. Seldon was standing on the right side of defendant's automobile and defendant was standing on the left side. Arthur Thomas and defendant started talking. Arthur told defendant "he was glad he seed him, he wanted to tell him about them stories he had been telling on him." More words about a liquor still were exchanged between defendant and deceased. Witness started to go into the back door of his brother's house. When he turned his back to start up the steps Thomas was standing on the right side of the automobile, leaning on the fender. Defendant was still standing in the door on the left side. As witness was going up on the porch he heard three shots. He turned and saw defendant shooting across the hood of his car. Arthur Thomas was walking away from the car, going toward witness' home, and was about ten feet from the car. Witness heard seven shots in all, three as he was going up the steps and four after he turned around. Deceased fell after the last shot was fired. At that time he was about fifteen feet from the car. The witness stated he told defendant, "Booster, you shot Arthur." Defendant replied, "The son-of-a-bitch trying to run my business ought to be dead." Thomas fell on his face and turned over on his back. Witness did not see deceased with a weapon of any kind.

This witness testified on cross examination his back was to defendant and deceased when he heard the first shot; that he did not know whether defendant was standing or was on the ground when the first three shots were fired; did not know whether deceased was hovering over defendant with a knife or whether he hit defendant with anything. Lights were on inside the house but there were no lights on the outside. When he heard the last four shots deceased was walking straight away from the car, "up a path from my brother's house." He had not said deceased's back was directly to defendant. "He was walking frontwards." Defendant was shooting straight across the car hood. Witness left the scene and went to get deceased's wife.

W. H. Lewis, Lee County Coroner, testified he investigated the death of Arthur Thomas. Thomas was dead when he arrived at Eunice Jones' house. He was lying on his back. A bullet found under the body when it was moved was given by witness to Dr. Paul Shoffeitt, the state toxicologist. The body was taken to the Edgar Battle Funeral Home in Phenix City. Witness was present when Dr. Shoffeitt performed a post-mortem examination. The next morning witness received a .25 caliber pistol from Deputy Sheriff Wooten and turned it over to Dr. Shoffeitt.

Eunice Jones testified Arthur Thomas came to her house with one Harris shortly before the shooting. After a few minutes Thomas called to her brother-in-law, Willie James, and they left the house together. Shortly thereafter a car drove up in back and in a few minutes she heard shots which sounded like firecrackers being shot in a pack. She saw lights of a car backing out and a figure standing in her yard that she later learned was Chester Seldon. She did not see deceased's body until she got an extension light. The body was in the same position when Coroner Lewis and the officers arrived as it was when she first saw it. She covered the body and removed a billfold from deceased's overall pocket.

On cross examination the witness stated she did not see Willie James Jones from the time he went out of her house, a few minutes before the shooting, until much later in the night.

Ed E. Johnston, Jr., Clerk of the Circuit Court of Lee County, testified he had received evidence introduced at a former trial, and identified a .25 caliber automatic pistol and other exhibits as having been in his custody and stated they were in the same condition as when offered at the former trial.

K. A. Wooten, a deputy sheriff of Lee County, testified that the night of March 13, 1964, he received a pistol from defendant at George Hearn's house and the next morning gave it to Mr. Lewis, the Coroner. He saw the body of Arthur Thomas at the Jones house. He did not search the body for weapons and did not see Willie James Jones at the scene. When the body was placed in the ambulance he picked up a bullet where the body had lain and gave it to the Coroner. He also identified State's Exhibit 7 as the gun he recovered from defendant.

Dr. Paul Shoffeitt, a toxicologist and assistant director of the Department of Toxicology and Criminal Investigation, testified he performed an autopsy on the body of Arthur Thomas on March 13th, at the Edgar Ballard Funeral Home in Phenix City. Coroner Lewis was present. The witness observed several bullet wounds on the body. There was one entrance type wound in the lower abdomen to the right of the midline and an exit type wound near the midline and just below the navel. This was a continuous wound. There was another wound on top of the right shoulder, right of the neck, which ranged downward and toward the middle of the body or backbone. A bullet was removed from this area. In the right back there were two entrance wounds, one ranging generally from the right rear toward the left front. It penetrated the right chest, right lung, large blood vessel near the top of the heart and into the tissue just below the left nipple. A second bullet was removed at this place. There was another wound of the right back that ranged generally straight across into the right Thoracic cavity. Within this cavity, down next to the diaphram, a third bullet was removed. In the right arm, midway between the shoulder and elbow, there was a wound into the tissue posterior to the rear of the large bone, through the arm entering from the lateral side, coming out on the inside. In line with that wound there was an entrance wound ranging downward and to the left, penetrating the liver and other tissue in that area, through the area of the right kidney and toward the backbone. In witness' opinion death was caused by hemorrhage and shock from bullet wounds to the body. Over defendant's objections two photographs of the body made by this witness were introduced in evidence. The bullets, marked State's Exhibits 3, 4, 5 and 6, were identified by the witness, who also identified State's Exhibit 7 as the pistol Coroner Lewis had delivered to him.

This witness testified he made a ballistics test and it was his opinion the three bullets he removed from the body and the bullet he received from Coroner Lewis were fired from the pistol marked State's Exhibit 7. Deceased was 5 feet, 8 inches tall and he was rather a large man, stoutly built. In his opinion there were five bullet wounds on the body. "There was one of the bullets that ranged generally straight across that could have been fired from the rear. The other wounds were more from the right rear."

Arthur Harris testified he went to the home of Eunice Jones with deceased. In a very short time deceased left with Willie James Jones but witness stayed in the house. He heard the shots and went to the door. There were no lights on the outside and it was dark. Chester was standing at the steps and he saw the car lights going away. He did not see Willie James Jones from the time he left the house until he returned with deceased's wife about thirty minutes after the shooting.

Ernestine Thomas, deceased's daughter-in-law, testified she took two dollars from the watch pocket of deceased's overalls and gave it to his wife. She saw no guns, knives, sticks or weapons of any kind near the body.

For the defendant, Chester Seldon testified when he and the defendant stopped at Eunice Jones' house, he got out of the automobile on the right side and defendant got out on the other. About that time Arthur Thomas walked up. The witness saw no one with Thomas. Arthur Thomas said he

was glad he got these "two son of bitches together," (referring to witness and defendant). Other words were exchanged and then Arthur Thomas hit the witness and knocked him down. The next thing he heard was defendant saying, "You better get back, you better get back." Arthur Thomas was between defendant and the witness. Then he heard a shot, but didn't know hom many shots were fired, it all happened so quickly. There was no one in the yard but witness, defendant and deceased and he never saw Willie James Jones there.

A. C. Kimber testified he was at defendant's house when he learned of Thomas' death. It was about 7:30 or 8:00 o'clock. He stayed there five minutes and went to the scene of the shooting, two miles away. Willie James Jones was not at the scene when he arrived, however, the witness had seen Willie James shortly before he heard of the shooting. En route to the defendant's house he saw Willie James in Fred Madden's yard. Fred Madden lived a quarter of a mile from Wilson Lanier. He asked Willie James if he had seen Lanier and he answered that he had seen Lanier and Chester together earlier, but he didn't say anything about a shooting then.

Raymond Lanier, defendant's brother, stated he went to the scene after the shooting. Rufus and Edgar Battle came with ambulance and he saw them put the body in it. They took a pocket knife, keys and some change from the body. The knife was about four inches long and brown handled. They gave the knife to a lady and she handed it to another person. He did not know what became of it.

The defendant testified he was driving Chester Seldon home and they stopped at Eunice Jones'. He parked the car in the back yard. It was dark then. As he got out of the car and got around in front of the front bumper, up walked Arthur Thomas. Thomas said, "I'm glad I got you two son of a bitches together," and, "he was tired of us going over there and telling those folks damn lies on him." Then Thomas hit him and knocked him down on the ground. "The next thing I know I seed him started back to me, and I commenced hollering to him to get back, get back, and I seed he wasn't gonna stop. * * * he come on me just like this (indicating), he was trying all kind of ways, trying to get me." He said deceased was turning and twisting all the time he was coming on him and he said he was going to kill him. Deceased did not stop until he shot him. He never fired any shot while deceased was walking away.

On cross examination defendant said he was convicted of murder when he was fifteen years old.

Several witnesses testified to defendant's general good reputation and his good reputation for peace and quiet.

■ The defendant admits a killing by the intentional use of a deadly weapon. The question of whether the killing was justified was for the jury to determine from the evidence. Chastain v. State, 36 Ala.App. 186, 54 So.2d 623; Colvin v. State, 39 Ala.App. 355, 102 So.2d 911; Irons v. State, 42 Ala.App. 349, 165 So. 2d 125. The evidence was sufficient to support the verdict. There was no error in denying the motion to exclude the state's evidence, in refusing the requested affirmative charge, nor in denying the motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict.

■ The appellant urges that the trial court erred in permitting the Coroner, Mr. Lewis, to testify the body was in the same condition when it reached the funeral home as it was at the time it was removed from the scene. The coroner testified he did not remove the clothing and did not examine the body at the scene, but that he followed the ambulance and was in sight of it all the way to the funeral home. We find no error in the court's ruling.

■ Dr. Shoffeitt testified that after he removed the clothing he made pictures of deceased's body and that the pictures introduced correctly depict the condition of the body at that time. These pictures were properly admitted in evidence. McKee v. State, 253 Ala. 235, 44 So.2d 781; Hines v. State, 260 Ala. 668, 72 So.2d 296.

■ Requested Charges 14, 27 and 34 were properly refused. The guilt of the defendant did not depend upon the testimony of one witness, Willie James Jones; therefore the charges are abstract. Furthermore, these charges were covered by the court's charge to the jury that if they believed that any witness "has wilfully and corruptly testified falsely to a material fact, then the jury may disregard all of that witness' testimony." Keith v. State, 253 Ala. 670, 46 So.2d 705.

■ The court charged the jury:

"And then the next element of it (self-defense) is one must be in imminent danger of his own life, and that is of being killed himself, or of great bodily harm * * *. And that imminent danger of his own life being taken or of great bodily harm may be actual, or it may be apparent, if it is such circumstances as a reasonable man would come to the honest and bona fide belief that he is in great danger of his own life being taken or of great bodily harm, even though it may not actually be so, if it could convince a reasonable man of it, then that phase of it may be established."

This portion of the court's charge sufficiently covered the defendant's right to reasonably act on the appearance of things. (Requested Charges 28, 29, 30, 31, 32.) See Suggs v. State, 36 Ala.App. 66, 54 So. 2d 794, Cert. den. 256 Ala. 388, 54 So.2d 797. Furthermore, these requested charges, as well as requested charge 33, are not hypothesized on freedom from fault or duty to retreat. See Chaney v. State, 178 Ala. 44, 59 So. 604.

The verdict is as follows:

"We, the Jury find the defendant guilty of murder in the second degree, as charged in the within indictment and fix his sentence at eleven (11) years."

■ It is argued that the verdict is defective and insufficient to sustain the judgment of conviction, because it attempts to fix the sentence and fails to fix the punishment at imprisonment.

There is no merit in this insistence. The verdict is sufficient to support the judgment. Powell v. State, 7 Ala.App. 17, 60 So. 967; Knight v. State, 230 Ala. 357, 161 So. 232.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.