# Maxwell v. The State.

## Murder.

(Decided June 3, 1914. 65 South. 732.)

1. *Names; Abbreviations; Junior.*—The addition of Junior, or its abbreviation, is a mere matter of description, and constitutes no part of the name.

2. *Same; Persons of Same Name; Distinguished.*—Where an uncle and nephew were of the same name and resided in the same community, but were in different businesses, the addition to the name of

[Maxwell v. The State.]

the nephew of the business in which he was engaged, as written on the jury slip, was sufficient to distinguish him from his uncle; the suffix, Junior, or its abbreviation not being the only method of distinguishing between such persons.

3. *Same; Presumption.*—Where two persons resided in the same community, and are of the same name, and the name is written without the addition of either junior or senior, the presumption that the senior is intended may be rebutted, and is rebutted by the addition of the description of the business in which the junior only is engaged.

4. *Appeal and Error; Waiver; Omission to Insist.*—Such grounds of defendant's motion to quash the venire as are not argued on appeal will be deemed to be waived, and will not be reviewed.

5. *Homicide; Evidence; Defendant's Acts After Difficulty.*—The fact that after a difficulty defendant sent for a doctor to attend the deceased was no part of the res gestæ, and was not admissible.

6. *Same; Relevant.*—Where the landlord killed his tenant in a difficulty which arose from the refusal of the tenant to go with the landlord to their mutual corn patch for corn to be used for meal, and the tenant's widow testified that before her husband refused to go he had asked her if they had sufficient meal for the week, and that she had replied in the affirmative, but added that all they had to live on was dry bread alone, such added statement was irrelevant, and hence, defendant was not entitled to show that he had given the tenant orders on a grocer which had never been presented, and that if deceased's family were without provisions, it was not his fault.

7. *Same.*—Where the state proved that on the evening before the killing defendant borrowed a pistol with which to kill deceased, to justify the inference that defendant went to deceased's house to kill him; and to rebut this inference, and to show that he borrowed the pistol for self-protection only, defendant proved that he had had several controversies with deceased, the last and most serious of which happened on the day before he borrowed the pistol, in which deceased refused to permit any more of their cotton to be taken to a particular gin, stating that it would have to be carried to another gin, or he would die and go to hell, and that deceased walked off after reminding defendant of previous controversies, evidence that after such statement defendant in the presence of others, but not in the presence of deceased, stated that in order to avoid trouble he would yield to deceased's wishes and permit the remainder of the cotton to be carried to the gin selected by deceased, was not admissible, unless so closely connected with the threat of deceased as to form a part of the res gestæ.

8. *Same.*—Where a statement made by defendant in the absence of deceased, after deceased had made certain threats against defendant, is admissible as a part of the res gestæ of the threats, its probative force is still for the jury, depending on whether they believed the statement was made, and on whether it expressed the honest purpose of defendant, when made, not to participate in a difficulty with deceased, or was a pretense to shadow his contrary intentions, and whether, if it did evidence defendant's intention at the time such intent was not changed before the final difficulty.

9. *Same; Instructions; Self-Defense.*—A charge asserting that if defendant did not provoke or bring on the difficulty, but went to the home of deceased in a peaceful manner, and being angry.the deceased advanced on defendant with an axe in a threatening manner, and defendant had no reasonable mode of escape, then he had a right to draw a pistol and fire the fatal shot, was objectionable in ignoring the question of defendant's imminent peril.

10. *Same.*—A charge asserting that defendant was entitled to arm himself for his own defense, although abstractly correct, was calculated to induce the jury to believe that it was a direction from the court that, in arming himself, defendant did so for self-defense, which was a disputed proposition.

11. *Charge of Court; Particular Facts.*—The court is not required to disassociate facts and circumstances which are associated in the evidence, and to charge that a particular fact alone has no probative force, when in the evidence it does not stand alone.

12. *Same; Credibility of Witnesses.*—A charge asserting that when a witness has been contradicted in a material particular the jury may disregard his entire testimony, is properly refused as permitting such action on the part of the jury, although they may not have believed the evidence that contradicted him, and though his uncontradicted testimony may not be disputed.

13. *Evidence; Character.*—General character is the reputation one has in a community in which he lives, resulting from his general walk and conversation and cannot be shown by proof of particular acts of good or bad conduct, but only by proof his general reputation.

14. *Same; Rebuttal.*—Where after testifying to defendant's good character, a witness was asked on cross-examination whether he had heard of defendant having any trouble with M., and replied that he knew they had had a law suit, the defendant's remedy was to move to exclude it as not responsive, as he was not entitled to show in rebuttal that the law suit was determined in defendant's favor after being submitted to arbitration.

15. *Same; Conclusion.*—A witness may not give his conclusion that a piece of pasteboard he saw in the yard of deceased was a knuck pattern.

16. *Witnesses; Cross; Examination; Character.*—Where a witness testifies to the general reputation of another he may be cross-examined as to reports and rumors of particular acts bearing on such reputation; not to prove that the reports or rumors are true, but as bearing on the knowledge and soundness of the witness's opinion as to such person's general character. '

APEAL from Wilcox Circuit Court.

Heard before Hon. B. M. MILLER.

Joe Maxwell was convicted of manslaughter in the first degree on an indictment for murder in the second degree, and he appeals. Affirmed.

The person alleged to have been killed was Turner Blackmon. The other facts sufficiently appear from the opinion. The following charges were refused to defendant:

(13) If defendant did not provoke or bring on the difficulty, but went to the house of deceased in an orderly and peaceful manner, and deceased becoming angry and insulting, advanced upon defendant with an axe in a threatening manner, and if you further believe that defendant had no reasonable mode of escape, then he had a right to draw a pistol and fire the fatal shot.

(X) The court charges the jury that, if you believe that the witness Mrs. Blackmon has been contradicted in any material part of her testimony, you would be authorized to disregard all of her testimony.

(H1) Defendant had the right to arm himself for his own defense.

(N1) Under the undisputed evidence in this case, defendant owned the premises where the killing took place, and had a right to be there for the transaction of lawful business with deceased, who was his tenant, and the fact of his presence there at that time without more, cannot be regarded as an unfavorable circumstance against him.

The following is the charge given for the state:

(5) If the jury believe from the evidence in this case beyond all reasonable doubt in Wilcox county, Ala., before the finding of the indictment in this case, the defendant purposely killed Turner Blackmon, after reflection with a wickedness or depravity of heart towards deceased, and the killing was determined on beforehand, even a single moment before the fatal shot was fired, then defendant is guilty of murder in the first degree.

BONNER & MILLER, and F. W. HARE, for appellant. The wrong party appeared and served as a juror, a party

whose name had never been put in the jury box by the commissioners, and hence was not cured by the provisions of the jury law.—*Acts* 1909, p. 305; *Shepard v. State,* 5 Ala. App. 178; *Jackson v. State,* 55 South. 118. It was competent to show what defendant did about sending for the doctor to see deceased.—*Pate v. State,* 150 Ala. 10; *Williams v. State,* 147 Ala. 10; *Mayberry v. State,* 107 Ala. 67; *Smith v. State,* 88 Ala. 73. Defendant was entitled to offer in evidence his previous efforts to avoid the trouble.—6 Enc. of Evid. 765; 96 Ala. 24. The court should have permitted Chappel to state what it was he saw in the back yard of deceased's home, as well as the condition of the ground.—*Boyd v. State,* 153 Ala. 38; *Vaughn v. State,* 30 South. 671; *State v. Clare,* 6 South. 129; *Green v. State,* 53 South. 286. The court erred in giving charge 5 to the state.—*Carr v. State,* 106 Ala. 11; *Hornsby v. State,* 94 Ala. 55; *Domingus v. State,* 94 Ala. 9; *Poe v. State,* 155 Ala. 31. Charge U-1 should have been given for defendant.—*Cheney v. State,* 55 South. 801. Charge X should have been given.— *Seawright v. State,* 160 Ala. 33; *A. G. S. v. Frazer,* 93 Ala. 45; *Mills v. State,* 1 Ala. App. 67. Counsel discuss other assignments of error, but without further citation of authority.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. Counsel discuss the errors assigned, but without citation of authority.

THOMAS, J.—The addition of "Junior," or its abbreviation, to a name is a mere matter of description, and is no part of the name. It is generally used to distinguish between father and son of the same name who reside in the same community.—17 Am. & Eng. Ency. Law, 1036.

Such a suffix, however, is not the only means or method of distinguishing between two such persons bearing the same name, and who live in the same place. In the present case Frank L. Moore was drawn and summoned as one of the regular jurors, and his name was on the venire to try defendant's case. His occupation is given on the jury slip containing his name as that of a livery stable keeper. It appears that he has an uncle of the same name residing in the same town in which he resides; but it further appears that the occupation of this uncle is not that of a livery stable keeper. While it may be true that the juror ordinarily distinguishes him, from his uncle by adding "Jr." or "Junior" in writing his name, yet, by reason of the difference, as stated, in their several occupations, he is as effectually distinguished by adding his occupation after his name as he would have been had the suffix "Jr." or "Junior" been added thereto. Hence we know from the. occupation given that Frank L. Moore, the junior, is the person who was drawn, is the person who was served, and is the person who appeared in response to the summons. Consequently, the motion of the defendant to quash the venire served upon him, on the ground that Frank L. Moore, the senior, was the person drawn while Frank L. Moore, the junior, was the person who was served and appeared is without merit.

It may be that, where there are two persons of the same name in the same place—as father and son or uncle and nephew—where the name is written without the addition of either "Junior" or "Senior," as here, the senior is presumed to have been intended; yet such a presumption may be rebutted, and is, as seen, successfully rebutted in this case.

The other grounds of the motion to quash the venire are equally untenable; but, as appellant's counsel do not

[Maxwell v. The State.]

deem them of sufficient importance to discuss them, we are justified in not doing so, especially since the points raised by the grounds have before been before this court and disposed of adversely to the appellant in the following cases: *Fowler v. State,* 8 Ala. App. 168, 63 South. 40; *Garth v. State,* 8 Ala. App. 23, 62 South. 383.

Nor was there error on the part of the court in refusing to permit the defendant to show that, after the difficulty, he sent for a doctor to attend deceased. It does not appear that this act was a part of the res gestæ.— *Dick v. State,* 87 Ala. 61, 6 South. 395; *Lundsford v. State,* 2 Ala. App. 41, 56 South. 89.

The deceased was a cropper on the plantation of the defendant, and the difficulty occurred in the front yard of the tenant house occupied by deceased, in the presence of the wife of deceased, who, as a witness for the state, described the occurrence and detailed the conversation which then took place between the parties leading up to the difficulty. From her statement it appears, among other things, that defendant came down to the house and requested deceased to join him in getting from their mutual patch some corn and in taking it to mill. The latter said "No," and asked his wife, then present, if they had enough meal to do for the week. She testified, without objection, that she replied in effect that they did, but that all they had to live on was "dry bread, and dry bread alone." One word followed another between the parties, until, according to the state's evidence, the defendant drew a pistol and deliberately killed deceased, while, according to the defendant's evidence, he shot only in self-defense and to save himself from a blow from an axe in the hands of deceased, who first assaulted defendant by picking up the axe and advancing on him. Defendant offered to prove by his witness Watts, who was a merchant, that he (defendant) had given deceased

orders on Watts for groceries which deceased had never presented; and defendant's counsel stated, in connection with the offer to prove these facts, that the purpose of the proof was to show "that if the family of deceased was without provisions it was no fault of defendant." The mere statement of the proposition is such as to clearly show, without the necessity of discussion, that the proof offered is entirely irrelevant to any issue in the case. Whether deceased and his wife were justified or not in their complaint against defendant was not the question, but the question was: Was the defendant justified or not in killing the deceased, which depended upon his freedom from fault at the time of the difficulty in bringing it on, his lack of ability after the danger was imminent to retreat without increasing his peril, and the necessity for then striking the fatal blow as the only recourse open to him of saving his life or his person from serious bodily harm? The fact, if it be a fact, that it was no fault of the defendant that deceased and his family were without provisions had no possible bearing on either of these issues. It could tend only to engender a possible sympathy or rebut a possible prejudice that might have resulted from the quoted testimony of deceased's wife, but which testimony was legal evidence— a part of the res gestæ. Under the requirements and in the eyes of the law, the jury act neither from sympathy nor from prejudice, but on reason—the law of the case as applied to the facts of the case—and it countenances no testimony whose sole object is either to appeal to their emotions of sympathy or to rebut their emotions of prejudice, though it does not reject testimony, when material to the issues involved, merely because incidentally it has or might have such effect.

One of defendant's character witnesses, after testifying to defendant's good character, was asked by the state

[Maxwell v. The State.]

on cross-examination if he had ever heard of defendant's having any trouble with Frank Melton, to which the witness replied: "Yes, sir; I know of a little lawsuit they had." The defendant then offered to prove that the lawsuit was submitted to arbitration and determined in favor of defendant, which the court properly refused to permit.

General character is the reputation one has made in the community in which he lives, the resultant of his general walk and conversation, and it cannot be shown by proof of particular acts of good or bad conduct, but only by proof of his general reputation; that is, what his neighbors say about him, or how he is generally accepted and received or regarded by them.

A witness who, at the instance of either party, testifies to such reputation may however, on cross-examination by the other, be asked as to reports and rumors of particular acts bearing on such reputation—not for the purpose of proving that such reports or rumors are true, but merely of proving that the witness has heard them and thus to test the knowledge and soundness of his opinion as to the general character to which he has testified and to ascertain the data on which that opinion is based. The truth or falsity of such rumors or reports is entirely immaterial to the issue.—*Moulton v. State,* 88 Ala. 118, 6 South. 758, 6 L. R. A. 301; 1 Mayf. Dig. 154. Being so, it follows that it is likewise immaterial whether the conduct that is the subject of such rumor or report was justified or not.

Besides, the answer of the witness here to the question of the solicitor having gone beyond a response to such inquiry and having improperly stated a fact—that is, that the witness knew of a little lawsuit between defendant and another—the defendant's remedy, if he deemed such statement deleterious, was to have it excluded on

motion, as it was more than responsive to the question
and stated improper matters not called for by the ques-
tion.—*Moulton v. State, supra.*   In our view, however,
it was not even deleterious, as the fact that a man has
had a lawsuit is ordinarily no reflection upon his char-
acter, and the statement here that defendant had one
removed, in defendant's favor, the sting from the ques-
tion of the solicitor, which was evidently designed to
show that witness had heard of a different kind of trou-
ble.   The law invites its citizens to resort to its tribunals
for the adjustment of their differences, and condemns
any other course, unless it be one of a peaceable settle-
ment by mutual agreement or arbitration.   Certainly,
then, no proper adverse inferences can arise against a
man's character merely from the fact that he has had
a lawsuit.

The court also properly refused to allow the defend-
ant's witness Cappelle to give his conclusion that the
pasteboard he saw with holes in it in deceased's yard was
a knuck pattern.   It was for the jury to say, from all the
facts and circumstances given, whether or not it was a
knuck pattern.

The fatal difficulty occurred on Saturday morning,
and the state proved that on Friday evening, the even-
ing of the day before the difficulty the next morning, the
defendant borrowed from a neighbor the pistol with
which he killed the deceased.   This evidence, without
more, afforded basis for an inference that the defendant
went to the house of deceased, where the fatal difficulty
occurred, for the purpose of killing him.   In order to
rebut this inference and to show that only a motive of
self-protection prompted him in borrowing and carrying
the pistol, the defendant proved that before he borrowed
it he had had several controversies with deceased during
the course of the year about the crop, the last one, the

most serious, happening on the afternoon before he borrowed the pistol (Thursday afternoon), while he and deceased were at McClurkin's gin, where, at the direction of defendant, they had carried some of their joint cotton crop to be ginned, and that at such time deceased, in an angry mood and positive manner, stated to defendant, in the presence of others, that no more of their cotton should be brought to McClurkin's gin (the gin of defendant's preference) but that thereafter it would have to be carried to Pettie's gin (the gin of deceased's preference) or "he would die and go to h——," and that then the deceased, after reminding defendant of previous controversies, walked off. In connection with this proof the defendant then offered to prove, to which the state objected, that when deceased walked off after making this statement he (the defendant) then stated to others there present, but not in deceased's presence, that, in order to avoid trouble he (defendant) would yield to the wishes of deceased and permit the remainder of the cotton to be carried to Pettie's gin.

It was entirely competent for the defendant to show either threats or ill feeling on the part of the deceased.— *Rutledge v. State,* 88 Ala. 85, 7 South. 335; *Gafford v. State,* 122 Ala. 53, 25 South. 10. The object of the proof of such here being to show, as contended by defendant, not an absolute threat, which would lead defendant to expect serious and certain trouble whenever he saw deceased, and which would forbid that he go to deceased's house on any mission, but only such general animus and contrary disposition on the part of deceased, with respect to their mutual farming operations, as to indicate that it was not certain, but likely, that such animus might at some time, in the course of their dealings, break out into violence, and as consequently to suggest to defendant, who, by reason of these mutual

operations, would be brought into daily contact with deceased, the necessity of taking precautions for his safety and protection against such possible attacks by going armed—for defense, not for offense. The definite threat proved to have been made by the deceased to the defendant at the gin was, as seen, a conditional one; as to whether it would be executed or not depended on what defendant did, on whether he yielded or not to carrying the cotton to Pettie's gin. We are of opinion, therefore, that the mentioned declaration of defendant made at the gin after the quoted threat made by deceased at the gin was material, and was admissible evidence for defendant, provided it was so closely connected with the threat as to form part of the res gestæ of it (*Campbell v. State,* 133 Ala. 87, 31 South. 802, 91 Am. St. Rep. 17; *Maddox v. State,* 159 Ala. 58, 48 South. 689; and cases cited in these cases), as in such case it tended, in connection with the other evidence of defendant, to rebut the inference of the criminal motives, assigned him by the evidence for the state, in going to deceased's house, tended to rebut the inference that in arming himself and going there with a pistol he did so to provoke a difficulty on account of the gin controversy, and tended to show that his pleasant words and manner in approaching deceased at the time of the difficulty with respect to joining him in getting some corn out of their mutual patch and going to mill was sincere, and not a cloak to conceal a wicked design.

Its probative force, even if the declarations had been admitted in evidence as a part of the res gestæ of the threat, was still a qustion for the jury and depended, even if they believed it to have been made, upon whether they further believed it expressed defendant's honest purpose when made or was made merely as a blind to shadow his contrary intentions, and upon whether, even

if they believed it expressed his honest purpose then, such purpose was not subsequently, before going to the house of deceased, abandoned. Of course, if the declaration was no part of the res gestæ of the threats, it was on its face merely self-serving, and not admissible in evidence on any theory. Before, therefore, we would be justified in reversing the lower court for not admitting it, the record should affirmatively show such surrounding facts as to convince us that the declaration was a part of the res gestæ of the threats.—*Lunsford v. State,* 2 Ala. App. 41, 56 South. 89. It does not do so in this case. For aught appearing to the contrary here, the declaration may have been made a considerable time after the threats and after defendant had had time to think over the matter, form a purpose, and make a declaration to conceal it.—*Lundsford v. State, supra.*

It is not contended that any of the written charges given at the request of the solicitor were bad, except charge No. 5. With respect to this it may be said, without the necessity of further consideration, that the action of the court in giving the charge will not be reviewed, for reasons as pointed out in the following cases: *Evans v. State,* 109 Ala. 11, 19 South. 535; *Mitchell v. State,* 133 Ala. 65, 32 South. 132.

Charge 13 requested by defendant was properly refused, because, if for no other reason, it ignored the question of defendant's imminent peril at the time of firing the fatal shot.—*Richardson v. State,* 133 Ala. 78, 32 South. 249; *Abernathy v. State,* 129 Ala. 85, 29 South. 844.

Charge X was also properly refused.—5 Mayf. Dig. 128, §§ 13, 15. It was the equivalent of an assertion that when a witness has been contradicted in a material particular, the jury are authorized to disregard his entire testimony, and this notwithstanding they may not have

believed the evidence that contradicted him, and notwithstanding that the uncontradicted part of his testimony may be undisputed.

Charge H1, while abstractly stating a correct proposition of law, was properly refused, because, in the form requested, it was well calculated to create in the minds of the jury the impression that it was meant to be understood as a direction from the court that the defendant in arming himself did so for the purpose of self-defense, when it was for the jury to say whether he did so for offense or defense.

We are also of opinion that charge N1, requested by the defendant, was properly refused. While it is true that the uncontradicted evidence, both for the state and for the defendant, showed that the deceased was a cropper working defendant's land under the latter's direction and under a contract whereby he was to furnish the labor and defendant the land and teams, and while it is consequently true that the defendant had a right to be on the premises and to go even into deceased's yard, where the difficulty occurred, on any lawful business connected with their farming operations, and while it is consequently further true that his mere presence there, without more, would afford no unfavorable inferences against him, yet, there was more in this case, if the state's evidence be believed, and such in character, when considered in connection with such presence, as would make such presence an unfavorable circumstance against defendant. The court cannot be required to disassociate facts and circumstances which are associated in the evidence or to charge that a particular fact standing alone would have no probative force, when, in the evidence, such fact does not stand alone. The charge is abstract, in that it seeks to apply the law to a condition which does not exist in this case. We find nothing in

[Smiley v. The State.]

the case of *Cheney v. State,* 172 Ala. 368, 55 South. 801, cited by appellant, that asserts a contrary doctrine.

We have discussed only the points urged in appellant's brief, but we find no error in any part of the record, and the judgment of conviction is affirmed.

Affirmed.