# Lewis v. The State.

## Murder.

(Decided April 8, 1915.　Rehearing denied May 11, 1915.
68 South. 792.)

1. *Evidence; Judicial Notice; Term of Court.*—Where the caption of the record showing the organization of the court at which this trial was had was in the approved form, except that it stated that it was at a regular, special or adjourned term of the court, in the alternative, and the judgment entry fixed the date of the trial, the court could determine that the trial was had at a regular term as it takes judicial notice of the time prescribed by law for the regular term of the circuit and city courts.

2. *Homicide; Evidence; Threats.*—Where it appeared that defendant had told deceased that he would whip his son, and deceased had stated that he would have to whip him first, evidence was admis-

[Lewis v. The State.]

sible from the son that shortly after his father had made such remark, the defendant stated to the son that he was going home and coming back, and that the son would regret what he had done, the deceased being still present and hearing the threat; the threat being admissible as a declaration of hostility against deceased in view of the statement by deceased that he would protect his son, and as explanatory of the purpose of defendant in returning later with the gun.

3. *Witnesses; Examination; Answer.*—Where character witnesses for defendant were asked by the state if the defendant did not have the general reputation of a drunkard, and they answered, "Yes, sir, he gets drunk," such answer was unresponsive to the question, and upon proper motion the latter part of the said answer should and would have been excluded.

4. *Evidence; Character; Particular Acts.*—Where a character witness for defendant on being asked whether defendant did not have the reputation of a drunkard, answered, "Yes sir, he gets drunk," such answer was improper as a statement of a particular fact, and not of reputation; since evidence that defendant occasionally gets intoxicated is not evidence that his character is bad, and so does not impeach the testimony of the witness, that his character is good.

5. *Same; Judicial Notice; Drunkenness.*—The courts take judicial notice, as a matter of common knowledge, that habitual drunkenness tends to dethrone character and to destroy the moral fibre and make-up of a man, and that it will do so if persisted in.

6. *Same; Character; Drunkard.*—Where defendant's character witnesses had testified to defendant's good character, it was competent for the state to show by them that defendant's general reputation was that of a drunkard; not one who occasionally gets drunk, but one who habitually drinks strong liquors immoderately—a toper, a sot.

7. *Same; Particular Acts.*—A character witness on cross-examination may be asked whether he has not heard of certain acts of the party, tending to show that his character is not good, and so long as the questions and answers in that regard are confined to reputation or rumors as to such matters, and are not extended to involve a statement by the witness of his personal knowledge of the truth of the act, such examination is proper.

8. *Appeal and Error; Review; Reservation of Ground.*—A party objecting to evidence must assign grounds therefor, and a general exception taken to a partially defective answer, cannot be made the predicate for error.

9. *Same.*—Where it was properly shown that defendant had the general reputation of being a drunkard, the admission of the improper answer on cross-examination of a character witness for such defendant, that defendant got drunk, was not error justifying a reversal under rule 45, Supreme Court Practice, as it did not probably affect defendant's case injuriously.

Appeal from Henry Circuit Court.

Heard before Hon. M. Sollie.

Lloyd Lewis was convicted of murder, and he appeals. Affirmed.

(This case was reviewed by the Supreme Court on certiorari to the Court of Appeals, and the writ was denied. See 193 Ala. 677, 69 South. 1018.—Reporter.)

ESPY & FARMER, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

THOMAS, J.— (1) The caption of the record showing the organization of the court at which the trial was had is in the usual and approved form, except that, instead of stating positively whether the term at which the court was held was a regular, special, or adjourned term of the court, it states it alternatively, as follows: "At a regular, special, or adjourned term of the circuit court of Henry county, Ala., etc.

However, it appears from the judgment entry that the date of the trial was on March 14, 1914, which we judicially know to be during the time prescribed by law for the regular term of the circuit court of Henry county, and, consequently, that a trial on that date by that court could not be at a special or adjourned term, but only at a regular term.—Gen. Acts 1911, p. 728. We are further fortified in this position by the fact of the absence in the record of any order for a special or adjourned term.

(2) The evidence outside of the defendant's proved admissions tending to connect him with the commission of the homicide charged was entirely circumstantial; since no one saw the killing, and the first known of it was when the deceased was found dead in the public road by a traveler passing along some hours after the

3—13

killing. The state first introduced as a witness one W. W. Oliver, the son of deceased, who, after testifying that the defendant came to witness' house that morning before the killing that afternoon on an occasion when witness' father, the deceased, was present, was then asked by the state, over the objection and exception of defendant, the following questions, to which he gave the following answers: "Q. What did the defendant say to him [meaning to witness' father]? A. He told my father he was going to whip me. Q. What did your father say? A. He told him he would have to whip him first. Q. What did he say to you before he left? A. He said he was going home, and he was coming back, and when we met again I would regret what I had done. [Witness further testified that his father was still present and heard defendant make the above statement to witness.] Q. How long was it from the time your father told him he would have to whip him first before he [defendant] told you that? A. To the best of my judgment, it was about three minutes."

These conversations took place, as stated at witness' house in the morning about 10 or 11 o'clock, after which defendant left, and returned again about 1 or 2 o'clock in the afternoon with a gun in his buggy. At that time witness' father, who was still at witness' house, and had just hitched up his horse preparatory to driving off, also had his gun in his buggy. The two (defendant and deceased) then drove off down the road in the same direction at the same time, one in one buggy, and one in the other, with their respective guns, and in about 30 minutes after they left witness heard the report of a gun in the direction in which they had gone.

Even assuming that the conversation which took place that morning at witness' house between defendant and

deceased and the witness, before detailed, was inadmissible, as contended, as a part of the res gestæ, because not sufficiently connected in point of time to show it to be a part of a continuous transaction (but see *Jordan v. State,* 81 Ala. 20, 1 South. 577; *Armor v. State,* 63 Ala. 173; *Fallin v. State,* 86 Ala. 15, 5 South. 423), yet, it was certainly admissible for the purpose of showing that what defendant said to witness was intended as a declaration of hostility towards deceased, and was explanatory of defendant's purpose in returning later with a gun.—1 Mayf. Dig. 837; *Maxwell v. State,* 11 Ala. App. 53, 65 South. 732; *Campbell v. State,* 133 Ala. 87, 31 South. 802, 91 Am. St. Rep. 17; *Maddox v. State,* 159 Ala. 58, 48 South. 689.

When, after defendant had made the threat to whip deceased's son, and after deceased had told defendant that before he (defendant) could whip his (deceased's) son he (defendant) would have to whip him (deceased) first, the defendant then said that he (defendant) was going home and was coming back, and that when he came back the son would regret what he had done, it— what defendant last said—amounted to a declaration of hostility towards deceased, who had announced that he would take his son's part, as well as it amounted to a threat against deceased's son. It is always competent to prove any threats or declarations of hostility made by the person charged with the homicide against the person slain. In this case such a fact would be a circumstance which, in connection with the other facts and circumstances of the case we have detailed, would tend to show that defendant, and not some one else, killed deceased, and that such killing was done feloniously, and not in self-defense, as the defendant claimed.—*Hudson v. State,* 61 Ala. 333; *Johnson v. State,* 87 Ala. 39, 6 South. 400;

*Barnes v. State,* 88 Ala. 204, 7 South. 38, 16 Am. St. Rep. 48; 1 Mayf. Dig. 837. Consequently, there was no error in the action of the court in overruling the mentioned objections of defendant.

(3-6) The defendant introduced a number of witnesses who testified to his general good character. The state, over the objection and exception of the defendant, was permitted to ask on cross-examination each of these character witnesses this question, "Is it not a fact that the defendant's general character in the community in which he lives is that of a drunkard?" Every one of these witnesses answered, "Yes, sir," without qualification or equivocation, except the last one, who answered evasively, "Yes, sir; he gets drunk." The defendant separately and severally objected to and moved to exclude each answer as and when given by the witnesses upon the same grounds as were assigned in objections to the question, and reserved in each instance an exception to the action of the court in overruling the motion. If, instead of objecting to the answer of the last witnesses as a whole, the defendant had objected to and moved to exclude that part of it to the effect that defendant "gets drunk," and had assigned proper grounds therefor, the court would have committed error in not sustaining such objection and motion; since such part of said answer was clearly inadmissible for several reasons, to wit: First, because it was not responsive to the question; second, because it was the statement as a matter of fact, and not as a matter of reputation, of a particular act or acts of conduct on the part of defendant within the personal knowledge of the witness; third, because the fact, if it be a fact, that the defendant occasionally gets intoxicated, is not evidence that his character is bad, and does not tend to impeach

the testimony of a witness deposing to his good charac-
ter.—*Maxwell v. State*, 11 Ala. App. 53, 65 South. 732.
On the other hand, habitual drunkenness, we know as
a matter of common knowledge, does, as a rule, tend to
dethrone character and to destroy the moral fiber and
make-up of a man, and that, if persisted in, it will do
so. This truth is recognized by both the divine (1 Cor-
inthians, vi, 10) and human laws.—Const. §§ 173-175;
Code, § 3793, subd. 6; Code, § 7843, subd. 5; *State ex
rel. Attorney General v. Savage*, 89 Ala. 1, 7 South. 7,
183, 7 L. R. A. 426; *Campbell v. State*, 23 Ala. 66.

(7) It was entirely competent, therefore, for the state
to show on the cross-examination of defendant's said
character witnesses, and as tending to impeach them,
that the defendant's general character or reputation in
the commupnity in which he lives was, to the knowledge
of the witnesses, that of a "drunkard"—the term used
in the question of the solicitor—as that term, "drunk-
ard," means, according to the definition of Webster, not
one who occasionally gets drunk, but "one who habit-
ually drinks strong liquors immoderately; one whose
habit is to get drunk; a toper; a sot."—*State ex rel.,
etc., v. Savage*, 89 Ala. 1, 7 South. 7, 183, 7 L. R. A. 426.

(8, 9) It is always permissible, on cross-examination
of a witness who has testified as to the good character
of a person, to ask whether the witness had not heard
of certain enumerated acts of the party which tend to
show that his character is not good; and so long as such
inquiries and the answers thereto are confined to repu-
tation or rumors as to such matters, which the witness
has heard, and are not extended so as to involve a state-
ment by the witness of his personal knowledge of the
truth of the stated act or acts which gave rise to the
rumor or reputation, they are unobjectionable.—*Max-*

*well v. State,* 11 Ala. App. 53, 65 South. 732, and cases cited; *Hawes v. State,* 88 Ala. 37, 7 South. 302; *Jackson v. State,* 78 Ala. 471; *Smith v. State,* 165 Ala. 55, 51 South. 610; *De Arman v. State,* 71 Ala. 351; *Jones v. State,* 76 Ala. 81; *Jackson v. State,* 147 Ala. 699, 41 South. 178; *Noel v. State,* 161 Ala. 25, 49 South. 824. This rule was not violated in any of the questions asked by the solicitor or in any of the answers given by the witnesses, except the last part of the one given by the last witness, who, as before pointed out, stated: "Yes, sir; he [defendant] gets drunk."—*Maxwell v. State, supra.* For reasons hereinbefore pointed out, the court cannot be put in error for not excluding this answer; it having been objected to as a whole, and the last part only being objectionable, and the proper grounds of objection not having been assigned.

(10) Besides, we may add that, even if the objection had been properly made, so as to put the court in error here on the ruling, it does not follow that a reversal would necessarily result. It would not so result unless we would be able to say that the error probably injuriously affected defendant's case.—Rule 45 of the New Supreme Court Rules in 175 Ala. xxi, 61 South. ix. In view of the state of the proof, it occurs to us that it would not; since it was properly in evidence as shown, without dispute and from the lips of defendant's own witnesses, that he bore the general character of being a drunkard. This being so, the statement of the milder fact that he gets drunk could hardly have prejudiced his case.

We have discussed only the points insisted upon in briefs; but we have examined the whole record, and find no error.

The judgment is therefore affirmed.

Affirmed.