[Murphy v. The State.]

# Murphy v. The State.

### Murder.

(Decided April 4, 1916. Rehearing denied May 30, 1916.
71 South. 967.)

1. **Appeal and Error; Review; Presumption.**—The bill of exceptions need not affirmatively show the presentation to the court before the jury retires of requested instructions, in order to have the refusal of such instructions reviewed on appeal.

2. **Charge of Court; Covered by Those Given.**—Under Acts 1915, p. 815, it is not error to refuse written instructions which are adequately covered either by the oral charge of the court, or by written instruction given.

3. **Homicide; Instruction; Malice.**—A charge asserting that defendant's malice may be inferred from the shooting, unless the evidence relating to the shooting shows to the contrary, does not constitute reversible error because of the failure to add that such inference is rebuttable.

4. **Charge of Court; Misleading; Request.**—If a charge correctly states the law, and the adversary party apprehends that it may mislead the jury, the duty is on such party to request explanatory instructions, and unless he does so, the court will not be put in error for giving it.

5. **Appeal and Error; Harmless Error; Instructions.**—A reversal will not be had for the giving of charges which are merely misleading, unless they clearly prejudice the accused.

6. **Same.**—Where other portions of the charge state that the inference of malice may be had from the shooting, but that such inference may be rebutted, the giving of the instruction was not reversible error.

7. **Same.**—Where the fact that defendant inflicted the wounds on deceased was not in dispute, the court's assumption thereof does not constitute reversible error.

8. **Evidence; Opinion.**—The opinion of a physician as to the cause of death is competent evidence.

9. **Witnesses; Examination.**—Where a defendant cross examines a witness as to an immaterial dispute between himself and deceased, he cannot complain that the matter is fully developed on a redirect examination.

10. **Homicide; Evidence; Character.**—Where the issue of self defense in a murder trial is put forward as a defense, the character of the deceased cannot be shown by testimony as to what a particular individual said about him.

11. **Appeal and Error; Review; Matters Not Shown.**—Where the bill of exceptions does not disclose the grounds of objection to testimony interposed by defendant, nothing is presented for review thereon.

12. **Homicide; Evidence; Testimony.**—Where the character of deceased is put in issue testimony of a witness that he thought he knew deceased's character for peace and quiet, and that it was good, was admissible.

13. Same.—It was not admissible to show whether a witness had heard of deceased having law suits; also as to whether witness had heard of deceased having any trouble over an immaterial matter.

14. Same.—Testimony as to deceased's reputation for being a fussy, disagreeable man, was not admissible.

15. Same; Flight.—Where no attempt was made by the state to show flight by defendant, it is not admissible for defendant to introduce testimony showing that he did not flee.

16. Same; Character.—The testimony as to deceased's character for peace and quiet offered by the state was admissible under the issues in this case.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Jim Murphy was convicted of murder in the second degree under an indictment charging first degree murder, and appeals. Affirmed.

The charges requested for the state and given are as follows:

(4) If the wounds inflicted by defendant on Skidmore, and that by reasons of said wounds, and as a result thereof, the deceased was caused to have some other disease from which he died, then defendant would be responsible for inflicting said wounds unless he acted in self-defense in inflicting them.

(5) If deceased died from heart trouble which was brought about by reason of the infliction of the wounds, if it was brought about thus, then defendant is responsible for the death of deceased; and, if defendant thus caused the death of Skidmore, and did not act in self-defense in so doing, then defendant is not guiltless.

(7) If, from the evidence in this case, you find beyond a reasonable doubt that defendant, in this county, before the finding of this indictment in this case, shot deceased with a pistol, and that this shooting was done wrongfully, without justification, and was done maliciously, and you further find that said wounds so inflicted contributed to the death of deceased, that is, by bringing about the condition that caused deceased to die, then defendant would be guilty of murder of deceased; and in determining whether the shooting was maliciously done I charge you that malice on the part of defendant towards the deceased may be inferred from the shooting of the pistol, unless the evidence which shows the shooting with a pistol shows it was used without malice.

The other facts sufficiently appear.

[Murphy v. The State.]

E. W. GODBEY, and WERT & LYNNE, for appellant. W. L. MARTIN, Attorney General, J. P. MUDD, Assistant Attorney General, and OSCEOLA KYLE, for the State.

PER CURIAM.—Appellant was indicted for murder in the first degree, was convicted of murder in the second degree and given a sentence of ten years. The evidence for the state tended to show that the deceased, having taken up and put in his lot some cattle belonging to the defendant that were trespassing upon the premises of deceased in a stock-law district and doing damage to his crops, notified defendant over the phone, who promised that he would that afternoon go over to deceased's, pay the amount of damage that his (defendant's) cattle had done, and take them home; that upon the arrival of defendant that afternoon at the house of deceased he, accompanied by deceased and deceased's son, looked over the field where the cattle had trespassed for the purpose of estimating the damages, and then returned to the lot of deceased where the cattle were impounded, when it was discovered that a part of the cattle that had so trespassed did not belong to defendant; that thereupon a dispute or altercation arose between defendant and deceased as to the amount of damage the former should pay the latter for the injury done by his cattle that, in common with the others, had done the trespassing; that, no adjustment having been reached, the defendant finally said in an angry tone that he would let the law settle that matter later, but would now take his cattle home, and was proceeding to drive the cattle toward the lot gate, which he had ordered one of his servants to open, when the deceased and his son hurried to the gate, closed it, and stood with their backs against it, whereupon defendant immediately pulled his pistol and fired at deceased, the bullet striking deceased just below the knee, shattering the leg bone, from the effects of which the evidence tended to show the deceased died in 42 days thereafter.

The evidence for the defendant tended to make out a case of self-defense, and to show, among other things, that defendant did not shoot deceased until deceased was attempting to shoot defendant also with a pistol.

(1, 2) The only exceptions reserved relate to the rulings of the court on the admission and rejection of evidence, to its giv-

ing certain written instructions requested by the state, and to its refusal to give certain written instructions requested by defendant. There is no merit in the state's contention that the bill of exceptions does not show that these refused instructions were requested before the jury retired, and hence that they cannot be considered.—*Central of Ga. Ry. Co. v. Courson,* 10 Ala. App. 581, 65 South. 698. We find, however, upon a consideration of them, that, even assuming that each asserted a correct proposition of law applicable to the facts of the case their refusal would not justify a reversal of the judgment of conviction because it appears that each was fully covered either in the oral charge of the court or in written instructions given at defendant's request.—General Acts 1915, p. 815, amending section 5364 of the Code of 1907.

(3-6) None of the written charges that were given at the request of the state have become the subject of criticism in the brief of appellant's able counsel, except the ones numbered respectively 4, 5, and 7, it being conceded—which is undoubtedly true—that all the rest were properly given. The reporter will set out in full said charge 7, the concluding paragraph of which, reading as follows: "And in determining whether the shooting was maliciously done, I charge you that malice on the part of defendant toward deceased may be inferred from the shooting with a pistol, unless the evidence which shows the shooting with a pistol shows it was without malice," forms the basis of appellant's counsels' criticism of the charge, which may be best stated in their own language as found in their brief, to wit: "The last clause of the charge, and which instructs the jury that malice may be inferred from the shooting with a pistol, unless the evidence which shows the shooting 'shows that the weapon was used without malice,' is the equivalent of telling the jury that they might shut their eyes to all proof tending to rebut malice, except any proof thereof that might have been included in the proof of the shooting. No matter how cogent the extraneous proof rebutting all presumption of malice, still, if that rebuttal did not grow out of the proof of the shooting itself, the jury might, under their oaths, according to this charge, ignore it, and, not finding any inherent thing rebutting malice, convict defendant of murder."

Viewing the charge as a whole, and in the light of the evidence, we think it not subject to the criticism named. The part complained of was merely intended to assert, and only asserted the well-known doctrine that in a homicide case malice may be inferred from the intentional use of a deadly weapon unless the evidence which proves the killing disproves the malice.—*Allen v. State*, 148 Ala. 588, 42 South. 1006; 2 Mayf. Dig. 659, par. 7. It is true that the charge did not expressly state that this inference is a rebuttable one, but such idea is implied from, or, to say the least, is not excluded by, the language of the charge. It was hence a correct exposition of the law, and if, from its failure to go further and explain that the inference of malice so authorized to be drawn under the conditions named in the charge was a rebuttable one, and should be allowed to last only until overcome by rebutting evidence offered by defendant, defendant feared that the jury might misunderstand it and be misled into erroneously believing something now suggested by him, but which the charge did not assert, that is, that they, the jury, had a right, unless the evidence for the state which showed the killing showed also an absence of malice, to conclusively infer the existence of malice and to ignore all other evidence, it was his duty to have asked an explanatory charge.—*Daniel v. Bradford*, 132 Ala. 262, 31 South. 455; 5 Mayf. Dig. 150, par. 2; 6 Mayf. Dig. 103, par. 4. His criticism of the charge, even if just, shows, at most, that it was merely misleading. The rule is that the lower court will never be reversed for giving a misleading charge unless it clearly appears that the jury was misled by it to the prejudice of the party against whom it was given.—*Vandiver v. Waller*, 143 Ala. 411, 39 South. 136; 2 Mayf. Dig. 573, par. 17; 6 Mayf. Dig. 110, par. 17. It does not so appear here. On the contrary, the record affords persuasive evidence that the jury could not reasonably have been misled by the charge into believing that it meant what defendant now contends; for it appears from the record that the court, in its oral charge, dealt also with the subject of malice, instructing the jury, among other things, as follows: "Malice is an inferential fact; that is, it may be inferred from facts and circumstances positively proven, but the measure of proof must be so full as to exclude every other reasonable hypothesis. * * * It is the province of the jury to ascertain its existence. Whenever it is proven beyond a rea-

[Murphy v. The State.]

sonable doubt that one person has taken the life of another with a deadly weapon, the law presumes that it was done with malice, and imposes upon the slayer the burden of rebutting this presumption, unless the evidence which proves the killing shows it to have been done without malice."

In the light of this oral charge, which states fully and correctly the law on the subject, we see no room for rational contention that when the court subsequently, in a written instruction given at the instance of the state, correctly stated a part of the law on the subject, the jury were mislead into believing that the part not stated was contrary to what the court had instructed them in the oral charge; hence we think baseless the complaint of the defendant here when he contends that the jury were misled to his prejudcie, by the written instruction mentioned, into believing that, if the evidence which showed the killing with a deadly weapon failed to show that it was done without malice, they had a right not only to infer malice, but to infer it conclusively, and to disregard all extraneous rebutting evidence, however trustworthy and cogent they might deem it. The charge merely stated the conditions under which malice may be inferred—not must be believed—and stated them correctly. Its failure to go further and explain that the inference as authorized is not a conclusive, but a rebuttable, one, and ceases when overcome by opposing evidence offered by defendant does not, we think, render the charge either faulty or misleading . We are unable to find that any of the authorities cited by defendant hold to the contrary.

(7) Charges 4 and 5 given at the request of the state, while by no means model charges, furnish no ground for reversal. Each is a correct application of the law to some of the tendencies of the evidence.—1 Mayf. Dig. 659, par. 8. It is true that, as contended by defendant, each is subject to the criticism that it assumes that the defendant inflicted wounds on the deceased, but, as this fact was proved without dispute in the evidence, the assumption of its truth by the court in the charge affords defendant no cause for complaint.—*Birmingham Ry., L. & P. Co. v. Mullen*, 138 Ala. 614, 35 South. 701.

(8) The court did not err in overruling defendant's objection to the following question propounded by the state to its witness Dr. Wilson, to wit: "Tell the jury what, in your opinion, caused

his [deceased's] death, Doctor."—*Mobile Life Insurance Co. v. Walker*, 58 Ala. 290; *L. & N. R. R. Co. v. Stewart*, 128 Ala. 330, 29 South. 562.

(9) It developed from the evidence, without objection, that prior to the fatal difficulty between defendant and deceased there had been a dispute and some feeling between them as to a land line, and that defendant had built a wire fence between their adjoining properties which deceased subsequently had cut down. Defendant's counsel, on the cross-examination of one of the state's witnesses, drew out the fact that this dividing fence so built by defendant was built on the line that had recently been surveyed by the county surveyor as the land line between defendant's and deceased's lands. This attempt on the part of defendant's counsel to justify defendant's conduct in building the fence on this line and to show inferentially that deceased did wrong in cutting down that fence was entirely immaterial to any issue in the case. The defendant, having thus opened the door to illegal evidence on this subject, is in no position to complain at the subsequent action of the court in allowing the state, on the redirect examination of this witness, to draw out in rebuttal of the mentioned immaterial evidence the fact that the line so surveyed by the county surveyor, and on which defendant so built the dividing fence between his own and deceased's lands, was over on deceased's side of what previously had been looked upon as the dividing line, and which was marked by an old fence which had stood there for many years. The rule is that irrelevant evidence is admissible to rebut other irrelevant evidence which was introduced by the party objecting.—*Kroell v. State*, 139 Ala. 1, 36 South. 1025; *Longmire v. State*, 130 Ala. 66, 30 South. 413; 5 Mayf. Dig. 572, par. 2675.

(10) After defendant's witness Russell Mitchell had testified that he knew deceased, but could not say whether or not he was a turbulent and fussy man, defendant's counsel asked the witness if he (witness) ever heard anybody say whether deceased was that kind of a character or not, to which question the court sustained an objection. In this the court did not err. Such a question might have been proper in rebuttal and on the cross-examination of a state's witness who had testified to the good character of deceased for peace and quiet, and for the purpose of testing the knowledge of the witness (*Smith v. State*, 103 Ala. 57,

15 South. 866) ; but defendant by the question was endeavoring to prove by his own witness the bad character of deceased, which could not be done in this way. Knowledge of the estimation in which a man is generally held in the community, and not of what some particular individual may think or may say about him, is the only predicate for testimony as to his character.—*Jackson v. State,* 106 Ala. 12, 17 South. 333 ; *Moulton v. State,* 88 Ala. 116, 6 South. 758, 6 L. R. A. 301; *Morgan v. State,* 88 Ala. 224, 6 South. 761.

(11) The solicitor, on the cross-examination of one of defendant's witnesses who had testified to defendant's good character for peace and quiet, asked the witness if he had not heard, or if it was not rumored in the community, that defendant would get drunk and carry a pistol. The bill of exceptions recites immediately following the setting out of this question as follows: "The defendant objected to this question on the following grounds." But the grounds are nowhere set out. Hence no question is presented for review on this exception, as we are not permitted to speculate upon the grounds of objection interposed. The same may be said with reference to defendant's motion to exclude the answer of the witness.

(12-14) There was no error in overruling defendant's objection to the question propounded by the solicitor on cross-examination to defendant's witness McCullough, who, after having testified that he thought he knew deceased's general character in the community in which he lived, was asked if he thought he knew it for peace and quiet, and who was permitted to answer that he thought he did and that it was good.—*Collins v. State,* 3 Ala. App. 70, 58 South. 80; *White v. State,* 114 Ala. 10, 22 South. 111; *Rhea v. State,* 100 Ala. 119, 14 South. 853. On redirect examination the defendant asked the witness, among other things, if he had ever heard of deceased having any law suits. The court properly sustained the state's objection to this question.—*Maxwell v. State,* 11 Ala. App. 53, 65 South. 732. Likewise the court properly sustained the state's objection to defendant's question to this witness asking if witness had ever heard of deceased's "having had any trouble about the cotton warehouse at Hartselle." "Trouble," as used in the question, is a word of broad signification, and deceased may have had some about the cotton warehouse at Hartselle, and yet have had neither

a fuss nor a quarrel nor a personal difficulty about it. As to rumors of either of the latter, the defendant might have inquired for the purpose of testing the knowledge of the witness as to deceased's good character for peace and quiet to which witness had testified, but the fact that deceased had had "trouble" had no bearing on this issue, and the objection to the question was properly sustained.—*Maxwell v. State, supra.*

Defendant's witness T. Crow, who testified to defendant's good character, but who did not, either on direct or cross examination, testify at all as to deceased's character, was on redirect examination asked by defendant if he (witness) had ever heard of deceased being in quarrels or fusses. It has been heretofore pointed out that the law does not permit defendant to prove deceased's bad character in this way; hence the court did not err in sustaining the state's objection to defendant's question.—Authorities, supra.

(15) Defendant's witness Geo. Russell, after testifying on direct examination that he knew deceased, was asked by defendant if he knew deceased's "reputation for being a fussy, disagreeable man." On all doubtful questions as to who was the aggressor at the time of the fatal difficulty, the violent and bloodthirsty character of deceased, if such he had, should be allowed to enter into the account, but not his character merely for fussiness and disagreeableness; hence the court did not err in sustaining the state's objection to the question mentioned.—*Rhea v. State,* 100 Ala. 119, 14 South. 853.

(16) No flight of the defendant having been shown by the state, the action of the court in declining to let defendant prove that he did not flee from the community was free from error.—*Pate v. State,* 94 Ala. 14, 10 South. 665; *Johnson v. State,* 94 Ala. 35, 10 South. 667; *Jordan v. State,* 81 Ala. 31, 1 South. 577; *Barnett v. State,* 165 Ala. 59, 51 South. 299.

(17) The testimony of the state's witness J. L. Draper as to the good character of deceased for peace and quiet was entirely admissible, and defendant's objections thereto were properly overruled.—*Jones v. State,* 104 Ala. 30, 16 South. 135.

We have discussed all the errors insisted upon except the motion for a new trial. Under the act approved September 22, 1915 (General Acts 1915, p. 722), amending section 2846 of the Code of 1907, rulings of the lower court on motions for new trials in

criminal cases may now be reviewed on appeal. In the present case, which was tried after that act become operative, defendant made a motion for a new trial, which was overruled, and it is strenuously urged in brief that the court erred in so doing. We have carefully examined the evidence, and are not convinced that the action of the lower court in this particular was wrong.—General Acts 1915, p. 722. A recent statute relieves us of the duty of discussing that evidence.—General Acts 1915, p. 595, § 3.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.

NOTE.—The foregoing opinion was prepared by Judge THOMAS before his retirement, and has been adopted by the court.