Ricky Dabbs was indicted for murder, in violation of §13A-6-2, Code of Alabama 1975 and the torture or willful abuse of a child, in violation of § 26-15-3, Code of Alabama 1975. The jury found the appellant guilty of both offenses and he was sentenced to life imprisonment on the murder charge and ten years' imprisonment on the child abuse charge.
Flora Kyle testified she has two children, Kelvis, age 3, and Kelly, age 5. She had another child, Misty, who died at the age of thirteen months.
In November of 1985, Kyle and her three children moved in with the appellant at his *Page 826 
trailer. Kyle left her children with the appellant during the day while she went to work at Ardmore Industries.
Around 4:45 on the afternoon of December 10, 1985, the appellant picked Kyle up from work. He told her that Misty was hurt. He said that he was in the bedroom changing clothes and he heard the children hollering. He went into the living room and looked out of the open door. He said Misty had fallen out of the trailer onto the concrete steps. The steps were three feet high.
When Kyle arrived at the trailer park, Misty was at the trailer house of the appellant's brother and sister-in-law, Steve and Ann Dabbs. Their trailer was behind the appellant's. The paramedics were there working with Misty. Misty was transported to Huntsville Hospital by helicopter. She stayed in a coma in the hospital for nine days. Misty died December 19, 1985, of severe head injuries.
About one week before Misty was injured, Kyle noticed a bruise on Misty's head. The appellant told Kyle that Misty got her head hung in the couch.
A couple of days later, the appellant, Kyle and her children were visiting at Steve and Ann Dabbs' trailer. The appellant was holding Misty. He and Steve were arguing about a football game. The appellant got mad because Misty was crying and he threw Misty across the room approximately seven feet. Misty's head hit Kyle in the chest and she caught Misty. Misty was terrified. Kyle took her children home.
A week before Thanksgiving, there was a birthday party for the appellant's daughter at his trailer. Kelvis went to the bathroom on the floor and the appellant spanked Kelvis. Kelvis had welts of hand prints on his bottom after the spanking.
On Thanksgiving Day, the appellant, Kyle and her children were at Steve and Ann's trailer. Kelly ran into the kitchen where Kyle was and the appellant picked Kelly up by the hair and took her back to the couch.
Joseph Embry, a forensic pathologist for the Alabama Department of Forensic Sciences, performed the autopsy on Misty. His external examination revealed Misty had a bruise above her eyebrow. Embry's internal examination revealed two 4 1/2 inch skull fractures, one on each side of her head. He determined the cause of death to be massive head trauma.
Embry stated that Misty's injuries were caused by the type of force you would expect if you picked up a thirteen-month-old child and slammed one side of its head against a wooden surface and then did the same thing to the other side of the head. Embry testified that the injuries had to be caused by two blows because there was no connection between the two fractures.
Embry stated that an accidental fall from the height of three feet could not have caused Misty's massive brain damage. In his opinion, Misty's injuries were inconsistent with a fall from the trailer onto the steps.
Dr. John Montgomery testified that he is a pediatrician and he teaches at the School of Primary Medical Care, a part of the UAH medical school branch. Montgomery stated that he saw Misty in the intensive care unit the morning after she was admitted into the hospital. He testified that Misty had serious head injuries with central nervous system involvement. Misty showed signs of brain damage such as dilating pupils, difficulty with breathing and failure to recognize people and surroundings. Misty was in critical condition which meant she had a good chance of dying.
Montgomery testified that he had received training on how to detect signs of child abuse. By the time he saw Misty, there had already been reports by other doctors of suspected child abuse. Montgomery noticed hemorrhaging in the back of Misty's eyes which is characteristic of the shaken baby syndrome. Montgomery stated that the fall from the trailer could not have caused the injuries he observed in Misty.
Dr. Phillip Roth was a resident on call for pediatrics on the night of December 10, 1985. When Misty came in, she was unconscious *Page 827 
and she responded only to painful stimulus. Misty was treated for skull fractures and a cerebral contusion to the brain. She also had cerebral edema with the shifting of the brain away from the injuries.
That night, the appellant told Roth about the alleged accident. He said that he put Misty down for a nap on the living room floor. The appellant said he went into the bedroom to change clothes. When he returned to the living room, Misty was not there. The door was open and when he looked outside, Misty was lying on the ground motionless.
Roth stated that Misty's injuries were not consistent with the appellant's story so he made a report of suspected child abuse. Roth testified that he read a lot of cases concerning accidental falls by children. In all of those cases, none of the children ever sustained a subdural hematoma after the fall. There was no serious brain injury in accidental falls of three feet or less.
Tim Carter, a social worker with the Limestone County, Alabama Department of Pensions and Security, testified he received a complaint of suspected child abuse concerning Misty the day after her accident. From his investigation, the circumstances of Misty's injuries were suspicious so the Department took protective custody of her until her death.
Carter accompanied Kyle, along with the police, to the appellant's trailer to pick up her belongings. Kyle had decided to separate from the appellant and she was scared of retaliation.
At the trailer, Carter looked for evidence of the accidental fall such as blood, hair or skin but he could find none. Carter stated that the height from the trailer to the ground was twenty-nine inches. The steps were four feet wide and extended one foot past the door facing. The door handle and lock were properly working.
Carter could not find anyone in the trailer park who observed the fall. Carter asked Steve Dabbs if he could interview his son, Brent. His request was refused. Carter wished to interview Brent because he was told Brent was outside playing with Kyle's other two children when the accident allegedly occurred.
Brent Dabbs testified for the defense. He stated he was nine years old on December 10, 1985. That afternoon he was playing beside his uncle's, the appellant's, trailer with Kelly Kyle. Kelly opened the door to the trailer and Misty fell out. The appellant came out of the trailer and took Misty to Brent's parents' trailer.
Janet Baker, Ann Dabbs' sister-in-law, stated she was at Steve and Ann's trailer on the afternoon in question. After the accident allegedly occurred, Kelly told Ann that she was sorry and she didn't mean to hurt Misty.
The appellant testified that he never hurt Misty nor Kyle's other children. He said he did not see Misty fall.
 I
During the cross-examination of Kyle, the following occurred:
 "Q Mrs. Kyle, are you telling the jury that Ricky had assaulted your children on three prior occasions before December the 10th, and yet, you never did anything about it?
"A Yes, sir.
 "Q As a matter of fact, you were telling the jury that he assaulted Misty on two occasions prior to then, but you never did anything about it, did you?
"A No, sir.
 "Q As a matter of fact, you never did anything about it at all even on the 10th until you were contacted by the Department of Pensions and Security the next day, the 11th, did you?
"A No, sir.
 "Q And they came in and presented you with a petition to take your children away from you, didn't they?
"A Yes, sir.
 "Q And they scared you and made you sign a statement saying that you would never let these children come around Ricky Dabbs again, didn't you?
"A Yes, sir.
 "Q And that's when you came up with these stories about what had happened to *Page 828 
the children on previous occasions; isn't that right?
"A Yes, sir."
(R. 46-47)
The appellant contends the State failed to prove a prima facie case because Kyle testified she "made up" the child abuse incidents. However, on redirect, the following portion of the record is relevant.
 "Q Flora, a moment ago Mr. Totten asked you about telling the Department of Pensions and Security these things that happened to your children that Ricky did?
"A Yes, sir.
 "Q Have you lied to anybody about what Ricky did to your children?
"A No, sir.
 "Q Did you mean to imply to the jury that what you told the Department of Pensions and Security was in any way a lie or a story?
"A No, sir.
 "Q Did you tell them, in fact, what you had seen happen to your children?
"A Exactly what I saw happen to my children."
(R. 51)
Thus, it seems clear to this court that Kyle misunderstood defense counsel's question concerning whether she had made up the stories about child abuse by the appellant. This point was clarified on redirect when Kyle stated she was telling the truth about the instances of child abuse.
Section 26-15-3, Code of Alabama 1975 provides:
 "A responsible person, as defined in section 26-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
A "responsible person" is defined as:
 ". . . a child's natural parent, stepparent, adoptive parent, legal guardian, custodian or any other person who has the permanent or temporary care or custody or responsibility for the supervision of a child."
The State, through Kyle's testimony, presented direct and circumstantial evidence of the appellant's willful abuse and maltreatment of Misty. The jury has the duty to draw whatever permissible inferences it may from the evidence and can base its verdict on whatever permissible inferences it chooses to draw. Gullatt v. State, 409 So.2d 466 (Ala.Crim.App. 1981). Kyle's testimony concerning the appellant's abuse of Misty, if believed, was sufficient to authorize the appellant's conviction for the torture or willful abuse of a child. Burkettv. State, 439 So.2d 737 (Ala.Crim.App.), cert. denied,439 So.2d 737 (Ala. 1983). Whether the appellant was a "responsible person" under the statute was a question for the jury. Burkett, supra. Gullatt, supra.
The State presented a prima facie case under the evidence and, thus, the appellant's motion for judgment of acquittal was properly denied.
 II
The appellant asserts there was insufficient evidence to sustain his conviction for murder because the evidence was entirely circumstantial and there was testimony that Misty's injuries were the result of an accidental fall.
Circumstantial evidence is entitled to the same weight as direct evidence and it will support a conviction if it points to the guilt of the accused. Gullatt, supra.
Each of the State's experts testified that Misty's injuries were inconsistent with an accidental fall. The only evidence concerning an accident came from the defense. "Any conflicting evidence was for the jury to resolve." Gullatt, supra at 472.
The State presented sufficient evidence from which the jury could conclude, by fair inference, that the appellant was guilty of murder as charged in the indictment. This court will not substitute its judgment for that of the jury. Cumbo v.State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). *Page 829 
 III
The appellant claims that the evidence of other abusive acts by the appellant should not have been admitted.
 ". . . In a prosecution for murder, evidence of recent abuse to the child by the accused is admissible to show 'intent, motive or scienter.' Layne v. State, 54 Ala. App. 529, 534, 310 So.2d 249
(1975). Acts of hostility, cruelty and abuse by the accused toward his homicide victim may be proved by the State for the purpose of showing motive and intent. Akers v. State, 399 So.2d 929, 931
(Ala.Cr.App. 1981); White v. State, 380 So.2d 348, 349 (Ala.Cr.App. 1980); Carroll v. State, 370 So.2d 749, 759 (Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala. 1979). This is 'another of the primary exceptions to the general rule excluding evidence of other crimes.' C. Gamble, McElroy's Alabama Evidence, Sections 70.01(12)(c) and (e) (3rd ed. 1977).
 "Evidence of the defendant's recent abuse of his stepdaughter was also properly admitted despite the general rule that evidence of the accused's acts of hostility toward a third person in no way connected with the deceased or the offense is inadmissible. Voudrie v. State, 387 So.2d 248
(Ala.Cr.App.), cert. denied, Ex parte Voudrie, 387 So.2d 256 (Ala. 1980). 'However, where their connection with the offense sufficiently appears, evidence of prior difficulties between accused and a third person is admissible to show malice, premeditation, or general state of mind, as is evidence of accused's ill will toward a member of the family of deceased.' 40 C.J.S. Homicide, Section 209 (1944).
 "The appellate courts of this state have long recognized this rule especially where the victim and the deceased are closely related. Gregg v. State, 106 Ala. 44, 48, 17 So. 321 (1895); Shikles v. State, 31 Ala. App. 423, 428, 18 So.2d 412, cert. denied, 245 Ala. 641, 18 So.2d 417 (1944); Roberts v. State, 25 Ala. App. 477, 479-80, 149 So. 356
(1933); Lewis v. State, 13 Ala. App. 31, 34-5, 68 So. 792, cert. denied, Ex parte Lewis, 193 Ala. 677, 69 So. 1018 (1915)."
Phelps v. State, 435 So.2d 158, 163 (Ala.Crim.App.), cert. denied, 435 So.2d 158 (Ala. 1983). Thus, the appellant's acts of cruelty, abuse and hostility towards the victim, Misty, and her siblings were properly admitted into evidence. See alsoBurkett, supra; Baker v. State, 441 So.2d 1061 (Ala.Crim.App. 1983).
 IV
Two photographs depicting the extent of Misty's head injuries were admitted into evidence. Dr. Embry testified that he took the pictures of Misty during the autopsy and they were accurate depictions of her injuries. We must admit the photographs were gruesome, particularly since the victim was an infant. However, they were necessary to demonstrate to the jury the extent of Misty's injuries. Hamilton v. State, 492 So.2d 331
(Ala.Crim.App. 1986). There was no error by the admission of the photographs into evidence. Brodka v. State, 53 Ala. App. 125,298 So.2d 55 (1974).
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.